CHICAGO, ST. P., M. & O. RY. CO. et al. v.
UNITED STATES et al. (GLENDENNING
MOTORWAYS, Inc., Intervener).

No. 811.

District Court, D. Minnesota,
Fourth Division.

June 12, 1943.

Warren Newcome, of St. Paul, Minn., Amos Mathews, of Chicago, Ill., and Richard Musenbrock, of Minneapolis, Minn., for plaintiffs.

Robert L. Pierce, Sp. Asst. to Atty. Gen., for the United States.

Nelson Thomas, Atty., Interstate Commerce Commission, of Washington, D. C., for the Interstate Commerce Commission.

Perry R. Moore, of Minneapolis, Minn., for defendant Cornelius W. Styer.

Fred W. Putnam, of Minneapolis, Minn., for intervening defendant Glendenning Motorways, Inc.

Before SANBORN, Circuit Judge, and JOYCE and SULLIVAN, District Judges.

SANBORN, Circuit Judge.

This action was brought by the plaintiffs, common carriers by railroad, to enjoin and set aside in part an order of the Interstate Commerce Commission dated October 24, 1941, granting a certificate of public convenience and necessity to Cornelius W. Styer as a motor carrier of property in interstate commerce over various routes. The action is authorized by Title 28 U.S.C.A. § 41(28), § 44, § 47 and § 48. The plaintiffs are in a position to maintain the action as competitors of Styer and protestants before the Commission in the proceedings in which the order was entered. Alton Railroad Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586.

The plaintiffs assert that the portion of the Commission's order which they challenge and which conferred upon Styer the right to receive and deliver freight at intermediate points in Minnesota on the routes designated by the Commission in its report as routes 1, 2 and 3, is without any evidentiary support and is in excess of the power of the Commission. The defendants and the intervener (which has acquired the business and operating rights of Styer) deny that the Commission's order is invalid in any respect, and assert that the plaintiffs' action is barred by laches.

The three routes referred to in this case extend from the Twin Cities (St. Paul and Minneapolis) in Minnesota to Huron and Mitchell in South Dakota, passing through many intermediate points in both states. The right to operate over routes 1 and 2 was granted by the Commission to Styer, in Docket No. MC–47644, under the "grandfather" clause of § 206(a) of Part II of the Interstate Commerce Act, 49 Stat. 543, 551, 54 Stat. 919, 923, 49 U.S.C.A. § 306(a), which provides: " * * * if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time * * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation * * *." The right to operate over route 3 was granted in Docket No. MC–47644 (Sub.—No. 1) under the provisions of § 207(a) of the same Act, 49 U.S.C.A. § 307(a), which requires a showing that the proposed operation "is or will be required by the present or future public convenience and necessity." The "grandfather" proceeding and the "public convenience and necessity" proceeding were decided by the Commission in a single report and order.

This case has been submitted to this statutory court of three judges upon a certified

transcript of the evidence adduced before the Commission and upon evidence bearing upon the question of laches.

The first contention of the plaintiffs is that "the Commission erred in finding that Styer was entitled to 'grandfather' rights to pick up or deliver freight at any point on the 'grandfather' routes authorized in Minnesota except St. Paul and Minneapolis."

The Commission, in the "grandfather" proceeding, authorized Styer to serve, in both directions, all points located on routes 1 and 2, finding that he was in bona fide operation as a common carrier by motor vehicle over those routes, serving all intermediate points, on June 1, 1935, and thereafter. Unless this finding of the Commission is wholly without support in the evidence, it is conclusive upon this court. We cannot concern ourselves with the question of the correctness of the finding, but only with the question of the power of the Commission to make it. The power to decide a question includes jurisdiction to decide it either correctly or incorrectly. Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701. The plaintiffs contend that the finding is wholly without evidentiary support. They call attention to the following statement made by Styer's counsel at the "grandfather" hearing: "Applicant does not seek any rights, grandfather rights, to transport goods moving in interstate commerce from any Minnesota point to any Minnesota point upon the routes described, but he does seek to transport from points in South Dakota on these routes to all points in Minnesota irregularly."

The plaintiffs also refer to the following testimony of Styer relative to his operations and the "grandfather" rights which he sought:

"I claim to have a regular operation and an irregular operation in Minnesota. The regular operation is over the routes shown on Exhibit 1. The irregular territory or routes are not indicated on this exhibit. I claim to have regular and irregular operations of general commodities. The regular operation as indicated by the routes shown on this map are the routes over which our trucks go daily and that service is given. Those trucks go through those towns over those routes whether or not they have shipments for every town on every particular day. The irregular operation, for example, would be a shipment for Albert Lea where we would not go unless we had a shipment. In that nature it is irregular. The regular route operations are more or less on a fixed time schedule. That is the bulk of my operations. The irregular operation is only supplemental to our principal operation. It is principally for back haul out of South Dakota. The movement is unbalanced between the west bound and east bound freight and consequently the occasion arises for handling freight other than that destined to points on the regular routes, to attempt to balance the amount of freight moving, so that the trucks can more nearly move loaded in both directions. When I mention Albert Lea I don't know whether or not we have served that point. I mentioned that as an example.

"What we are asking for is a territory to which we offered service prior to June 1 and to which we have offered service up to the present date, over irregular routes on loads when available because there is no direct service to that point and there is a demand for service. We wanted it as a territory, to be operated in conjunction with our regular route operation. In other words our irregular operation is intended to take care of the movement mainly from South Dakota back into Minnesota. We are not asking for the right to transport commodities in interstate commerce from Minneapolis to Albert Lea. We are specifically restricting so as to not apply in interstate commerce between points in Minnesota. In short our operations from the Twin Cities to the South Dakota territory is chiefly our regular route operations.

"Originally we asked for territory in the entire State of Minnesota. We have now restricted that to a small territory in the southern and southwestern part of Minnesota."

It appears that the "grandfather" rights claimed by Styer in his testimony before the Commission were: (1) to transport freight from the Twin Cities to South Dakota points over regular routes, but not to Minnesota intermediate points or between such points; and (2) to transport freight from South Dakota points to all points in "a small territory in the southern and southwestern part of Minnesota" over irregular routes.

The evidence before the Commission showed that on June 1, 1935, Styer's transportation business was in its infancy; that he then had four transportation units; that his regular route operation was from the

Twin Cities to South Dakota points; that he had actually rendered no service to or between intermediate Minnesota points on his routes; that his eastbound operation was to off-route points in Minnesota, but that he had served intermediate points in South Dakota on his regular routes. Styer testified, however: "On and prior to June 1, 1935, I solicited business for intermediate points on the regular routes I operated over. I contacted personally quite a few shippers. * * * * It was my purpose from the beginning to solicit and render service to the intermediate points."

While it seems probable that in this testimony Styer was referring to service from the Twin Cities to South Dakota intermediate points, since on and prior to June 1, 1935, his tariffs apparently covered no other intermediate points on his routes, we think the Commission was free to place its own interpretation upon his testimony as to the extent of service tendered.

The Commission in its report made the following statement: "Prior to June 1, 1935 applicant served the intermediate points on routes 1, 2, 4, and 5 of Brookings, Iroquois, Forestburg, and Madison. Applicant does not claim the right to transport interstate shipments from the Twin Cities to points on his routes in Minnesota, but claims that such points were served eastbound from South Dakota. Although the proof of service at intermediate points on the above routes is not impressive, when considered in connection with the fact that operations by applicant were instituted only 2 months prior to the statutory date and the testimony of applicant that he did not limit his service to terminal points but held out service at all intermediate points and actually solicited such business, we are convinced that he should be authorized to serve all intermediate points on routes 1, 2, 4, and 5, and that a restriction to serve certain intermediate points in one direction only would make the authority granted unnecessarily complicated and it will not be imposed." This shows the basis for the Commission's including in the "grandfather" rights accorded to Styer authority to serve intermediate Minnesota points on routes 1 and 2.

■ The broad question which the Commission was required to determine in the "grandfather" proceeding was: What grant should be made to Styer under the "grandfather" clause of § 206(a), in order to assure him a substantial parity between his future operations and his prior bona fide operations? See United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 481, 62 S.Ct. 722, 86 L.Ed. 971. The Commission was not compelled to limit Styer to the exact pattern of his operations prior to June 1, 1935, and, in determining the scope of his "grandfather" rights, it could take into consideration the service which he was offering, as well as that which had actually been performed by him, prior to that date. United States v. Carolina Freight Carriers Corp., supra, 315 U.S. at pages 483, 484, 62 S.Ct. 722, 86 L.Ed. 971. It is true that an applicant has the burden of establishing his right to the statutory grant contained in the "grandfather" clause (Alton Railroad Co. v. United States, 315 U.S. 15, 25, 62 S.Ct. 432, 86 L.Ed. 586), and that, since that clause "confers a special privilege, the proviso defining exemptions is to be held to extend only to carriers plainly within its terms. McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 178, 83 L.Ed. 164." Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 83, 62 S.Ct. 932, 936, 86 L.Ed. 1283.

■ The "grandfather" clause of § 206 (a) contemplated that a common carrier by motor vehicle should retain the place in the national transportation system which he occupied on June 1, 1935, and that the rights granted him to continue operations without proof of public convenience and necessity should equal, but not exceed, the actual service being rendered by him on that date. As was said by Mr. Justice Jackson in his dissenting opinion in United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 493, 62 S.Ct. 722, 731, 86 L.Ed. 971: "In trying to limit the injury caused by transition from a purely private enterprise to a regulated public service industry, the general plan was to preserve to private owners the transportation values evidenced by actual conditions of operation on June 1, 1935, and to exempt them from meeting the requirements of 'public convenience and necessity' as to such operation. Those who obtained such 'grandfather' rights are not, however, limited to them. They may expand their territory or extend their service by proving that public convenience and necessity will be served thereby." See, also, McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164; Noble v. United States, 319 U.S. ——, 63 S.Ct. 950, 87 L.Ed. ——, opinion filed May 3, 1943; Noble v. United States, D.C., 45

F.Supp. 793, 800; Crescent Express Lines, Inc., v. United States, D.C., 49 F.Supp. 92, 94, 95.

■ It must be true, however, that the Commission, in determining the nature and extent of the "grandfather" rights of a carrier in a particular case, is not required to do so with mathematical precision, and that, within reasonable bounds, its estimate of the character and scope of the carrier's bona fide operation on and prior to June 1, 1935, must be accepted by the courts, which cannot substitute their judgment for that of the Commission.

■ The Commission has, in effect, ruled in similar proceedings that proof of actual operations as a common carrier to and from termini and some intermediate points on a regular route, coupled with evidence of a holding out of service and of a willingness and ability to serve all points on the route whenever shipments are offered, will justify a finding of bona fide operation to and between all points on the route. See Nevitt, Common Carrier Application, 4 M.C.C. 298, 299-300; Consolidated Freight Lines, Inc., Common Carrier Application, 11 M.C.C. 131, 136; Knaus Common Carrier Application, 20 M.C.C. 669, 671; Los Angeles-Seattle Motor Express, Inc., Common Carrier Application, 24 M.C.C. 141, 145; Tarbet Common Carrier Application, 31 M.C.C. 63, 66-67. In the instant case, it is apparent that the Commission regarded the proof of actual service between termini and to intermediate points in South Dakota, together with the evidence which tended to prove that Styer was offering and was able to serve intermediate points, whether in Minnesota or South Dakota, on the "grandfather" routes, as sufficient to justify the grant which it made to Styer. Proper deference must be paid to the Commission's interpretation of the law which it enforces, Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 88, 62 S.Ct. 932, 86 L.Ed. 1283, and, if there is any warrant in the record for the judgment of the Commission, it must stand. Rochester Telephone Corp. v. United States, 307 U.S. 125, 145, 146, 59 S.Ct. 754, 83 L. Ed. 1147. We think that the Commission's determination that Styer was entitled to the rights granted because of his bona fide operations as a common carrier on and prior to June 1, 1935, did not amount to an abuse of power.

■ We do not agree with the contention of the defendants that § 208(a) of the Act, 49 U.S.C.A. § 308(a), which authorizes the Commission, in issuing a certificate of public convenience and necessity, to attach "at the time of issuance * * * to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require," confers power upon the Commission to expand the special privilege granted by the "grandfather" clause of § 206(a) to those who were in actual operation as motor carriers on June 1, 1935. If, in the public interest, it is desirable that the rights to which such operators were entitled by virtue of § 206(a) be expanded, the power granted to the Commission by § 207(a) should be invoked to accomplish that result.

The Commission, in the "public convenience and necessity" proceeding, authorized Styer to serve all intermediate points on route 3, although he had, by amendment, withdrawn from his original application his request for authority to render "all service in interstate commerce between points in Minnesota." Sec. 207(a) provides for the issuance of a certificate authorizing operations "covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed * * * and that the proposed service * * * is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied."

■ The plaintiffs argue that Styer's amendment to his application was equivalent to an assertion that he was unwilling to serve intermediate points in Minnesota on route 3, and that it deprived the Commission of authority to grant him the right to serve such points. We think that this argument is too narrow and legalistic. The primary concern of the Commission with respect to operations over route 3 was the public interest and the furtherance of the transportation policy declared in the Act. We have no doubt that under § 207(a) and § 208(a) the Commission could condition its grant of operating rights over route 3 to meet its conception of what public convenience and necessity required of Styer. That Styer was not unwilling to accept the full grant of authority made by the Commission has since been demonstrated by his actual acceptance and use of it. In urging that Styer received greater operating rights than he asked for or was willing to accept,

it seems to us that the plaintiffs are urging a grievance which is not theirs.

We find it unnecessary to consider the question of laches.

Our conclusion is that the plaintiffs are not entitled to the relief prayed for, and that their complaint must be dismissed. Findings of fact and conclusions of law, and a decree, in conformity with this opinion, are filed herewith.