INTERSTATE COMMERCE
COMMISSION
v.
ALLEN E. KROBLIN, Inc.
No. 14921.

United States Court of Appeals
Eighth Circuit.
May 11, 1954.

Asa J. Merrill, Atty., Interstate Commerce Commission, New York City (James A. Murray, Washington, D. C., and Donald R. Partney, Kansas City, Mo., on the brief), for appellant.

David Axelrod, Chicago, Ill., for amici curiae, David Axelrod and Carl S. Steiner, in support of the position of appellant.

Craig H. Mosier, Waterloo, Iowa (Mosier & Mosier, Waterloo, Iowa, on the brief), for appellee.

Donald A. Campbell, Atty., Department of Agriculture, Washington, D. C. (Neil Brooks, Associate Sol., Washington, D. C., on the brief), for amicus curiae the Secretary of Agriculture, in support of the position of appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The Interstate Commerce Commission sought to enjoin Allen E. Kroblin, Inc., an Iowa trucking corporation, from hauling dressed poultry [1] in interstate commerce, because it had no certificate of convenience and necessity from the Commission, 49 U.S.C.A. §§ 306 and 309. The District Court denied the injunction and dismissed the suit, and the Commission has appealed.

The basis of the trial court's action was its considered view that the hauling of dressed poultry was a hauling of an agricultural commodity, and that the operation therefore was exempt from the certificating requirements of Part II of the Interstate Commerce Act, 49 U.S.C. A. § 301 et seq., under the provision of § 303(b)(6) that "Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation."

In its resolution of whether dressed poultry represented an agricultural commodity or constituted "manufactured products thereof", the court considered the question on the basis of the legal, the legislative, and the industrial realities involved, taking into account the general concept and the decisional definition existing as to the term "manufacture", the indicated purpose of § 303(b)(6) reflected in its legislative history and given confirmation in the consistent treatment by Congress of the attempts made from time to time to get the language of the section changed, and the industrial fact that the exemption was not a matter of favor to truck operators but of policy toward farmers, in the friendly concern of Congress for agriculture and its inherent problems.

All of this was exhaustively covered in a 30-page printed opinion prepared by the court and published in 113 F.Supp. 599. That opinion is so complete—in its searching-out of the legislative history, its compiling of the relevant decisions, and its detailing of the attempts, thwartings and shiftings that have occurred in the Commission's treatment of the exemption from the aspect of motor-carrier significance and not of agricultural object [2]—that any discussion by us would only involve a repetition of this assembled material and a duplication of substantial publication expense. We agree fully with the views of the District Court and, in the situation thus existing, we affirm the judgment upon the basis of the court's opinion, 113 F. Supp. 599.

If we were to undertake to add a word, it would be simply to emphasize the inescapable fact that, when Congress, in its enactment of § 303(b), chose to change the language of the exemption here involved, as it had been originally drafted and recommended by Joseph B. Eastman, then Federal Coordinator of Trans-

---

1. There was a stipulation that the poultry being hauled consisted of New York dressed poultry and eviscerated poultry. New York dressed poultry, according to the definition of the industry, is poultry from which the head and feathers have been removed and sometimes also the feet. Eviscerated poultry is poultry from which the head, feet, feathers and entrails have been removed, and the liver, heart and gizzard of which have been cleaned, wrapped and replaced in the carcass.

2. Section 303(b) contains other special exemptions for the benefit of agriculture, as to which the Commission similarly has attempted to make a narrow, rigid construction. Thus, in Interstate Commerce Commission v. Jamestown Farmers, U. F. Co-op. T. A., 8 Cir., 151 F.2d 403, we rejected the Commission's construction of the exemption as to motor vehicles controlled and operated by a farmers' cooperative association, under § 303(b) (5), as not being in accord with the legislative intent.

portation and long a member of the Interstate Commerce Commission, from one for motor vehicles used "exclusively in carrying * * * unprocessed agricultural products", to one for motor vehicles used "in carrying * * * agricultural commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation," the result necessarily was to put processed agricultural commodities, not rising to the state of a manufactured product, in the same class with unprocessed agricultural commodities, for purposes of the exemption.

Also, the statements made from the legislative floor, on which the amending action was predicated, that it was desired to make certain that pasteurized milk and ginned cotton would be left outside the certificating requirements of the Act, necessarily implied a recognition that, in the realities of agricultural marketing and distribution, certain processing incidents were inherent in or commercially attendant upon the existence of an outlet for the farmer, at a local or relatively local level, for various of his commodities, as a step in the channelizing of them into their natural-commodity market, and that the degree of freedom and flexibility allowed in the further transportation of such processed commodities, not reaching a manufactured state, was as much and as directly linked with the ability of the farmer to sell these commodities conveniently or to receive an advantageous price for them as in the case of unprocessed agricultural commodities. In other words, Congress obviously intended that, as a matter of relationship to the agricultural economy, the accomplishing of a distribution of processed agricultural commodities, not constituting manufactured products, should, within the necessities or practicalities of a marketing of them as such, be made to have no more transportational impact upon the farmer than the marketing of his unprocessed commodities.

And, within the realities of marketing and distributing poultry, the dressing thereof at the local market level would seem to be no more of a step in the disposing of it as poultry than would the pasteurizing of milk or the ginning of cotton in disposing of them as milk and cotton. Certainly, no less could hardly be done to make practicable the hauling of poultry as such, for natural food purposes, than a removing of the head and feathers thereof. Nor is it claimed here that there is any difference between New York dressed poultry and eviscerated poultry in relation to the question of manufactured products. The position of the Commission in its naked effect—though not thus baldly phrased—is simply that, as a matter of giving motor-carrier regulation as full a scope as possible, a chicken should be regarded as being converted into a manufactured product whenever its head has been cut off.[3] Neither the language nor the spirit of the agricultural exemption warrants us in adopting any such artificial concept and curb in the realities of marketing agricultural commodities.

It may incidently be noted that the Secretary of Agriculture takes the position that the Commission's construction and application of the agricultural exemption are untenable, and that both in the trial court and here he has appeared as amicus curiae, in opposition to the Commission's views. Representatives of various certificated trucking interests have of course also appeared, as amici curiae in support of the Commission's position.

Affirmed.

3. The statistics of the Department of Agriculture show that poultry is the third highest source of gross income to farmers in the field of agriculture. Poultry and Egg Statistics (October, 1953), U. S. Department of Agriculture, Production and Marketing Administration, Poultry Branch, p. 17–18.