**FROZEN FOOD EXPRESS, Plaintiff,**
Ezra Taft Benson, Secretary of Agriculture of the United States, Intervening Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

Common Carrier Irregular Route Conference of American Trucking Association et al., Intervening Defendants.

Civ. Nos. 8285, 8396.

United States District Court,
S. D. Texas, Houston Division.

Jan. 26, 1955.

Phinney & Hallman, Carl L. Phinney, Dallas, Tex., for plaintiff.

Stanley N. Barnes, Asst. Atty. Gen., and Charles W. Bucy, Associate Sol., Washington, D. C., for intervening plaintiff.

Malcolm R. Wilkey, U. S. Atty., Houston, Tex., and Edward M. Reidy, Chief Counsel, and Leo Pou, Associate Counsel, of Interstate Commerce Commission, Washington, D. C., for defendants.

Callaway, Reed, Kidwell & Brooks, Rollo E. Kidwell, Dallas, Tex., Todd, Dillon & Curtiss, Clarence D. Todd, Peter T. Beardsley, Washington, D. C., Baker, Botts, Andrews & Shepherd, J. C. Hutcheson, III, and Edwin N. Bell, Houston, Tex., Macleay & Lynch, David G. Macdonald and Francis W. McInerny, Washington, D. C., Reeder, Gisler & Griffin, Lee Reeder, Kansas City, Mo., J. W. Nisbet, Chicago, Ill., Carl Helmetag, Jr., Philadelphia, Pa., Rice, Carpenter & Carraway, Washington, D. C., Fulbright, Crooker, Freeman, Bates & Jaworski, W. H. Vaughan, Jr., Houston, Tex., for intervening defendants.

Before HUTCHESON, Chief Circuit Judge, and CONNALLY and KENNERLY, District Judges.

CONNALLY, District Judge.

Filed pursuant to Secs. 1336, 1398, and 2321–2325, of Title 28; to Sec. 1009, of Title 5; and to Sec. 305(g), of Title 49 U.S.C.A., each of the foregoing civil actions attacks and seeks to restrain enforcement of an order of the Interstate Commerce Commission. Presenting the same question of law, and substantial identity of parties, the actions were consolidated for hearing and trial. The question for determination is whether a number of different commodities, as later noted herein, all of which have their origin on the farm or ranch, fall within the scope of the so-called agricultural exemption, Sec. 203(b) (6) of Part II of the Interstate Commerce Act (Title 49 U.S.C.A. § 301 et seq.). By terms of the last-mentioned statute, motor vehicles used in carrying property consisting of "ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)", are exempt from Interstate Commerce Commission control (save for minor exceptions not here pertinent). The plaintiff in each of the consolidated actions, being a trucking concern holding a certificate of convenience and necessity from the Commission, desires to carry some or all of the commodities in question, unrestricted by the terms of its own certificate, or by other Commission regulation. Hence the plaintiff, supported to a considerable extent in this contention by the Secretary of Agriculture of the United States, urges upon the Court a broad interpretation of the statutory language "agricultural commodities (not including manufactured products thereof)", which would have the net result of enlarging this so-called agricultural exemption. The Commission, on the other hand, and those intervenors who align themselves with the Commission, urge upon us that most of the commodities in question, by virtue of the treatment and processing which they receive, either have lost their identity as "agricultural commodities", or have become "manufactured products thereof". The result of this argument is

drastically to restrict the scope of the exemption.

*Civil Action 8285:*

In June, 1948, the Interstate Commerce Commission, of its own motion, instituted a proceeding, being MC–C–968 on its docket, in the nature of an investigation, to determine the meaning and scope of the term "agricultural commodities (not including manufactured products thereof)", as used in the above-mentioned statute. The proceeding was widely noticed in the affected trades and industries. Many interested parties, including the Secretary of Agriculture of the United States, the Commissioners of Agriculture from a number of the States, associations of shippers, motor carriers, and others, intervened. After extended hearings, during which much expert testimony was offered as to the manner and method of cleaning, preparing, packaging, and otherwise processing the various commodities in question, the Commission issued its report and order entitled "Determination of Exempted Agricul-

tural Commodities", 52 I.C.C. Reports, Motor Carrier Cases, 511–566. In such report, the Commission announced its definition of such statutory term,[1] which definition it then undertook to apply to the various commodities under consideration, and enumerated those which it found to come within the statutory language, and those which it found to fall without.[2] Thereupon, the proceeding was terminated and removed from the Commission docket.

The plaintiff Frozen Food Express was not a party to the proceeding before the Commission. By amended complaint filed here July 12, 1954, plaintiff alleges that it desires to carry agricultural commodities (not including manufactured products thereof) for hire, to and from all points within the United States, irrespective of the limitations imposed by its own certificate; that the report of April 13, 1951, deprives plaintiff of its right to do so. Alleging that the action of the Commission, in entering the report in question, was arbitrary, capri-

---

1. "In No. MC–C–968, we find that the term 'agricultural commodities (not including manufactured products thereof)' as used in section 203(b) (6) of the Interstate Commerce Act means: Products raised or produced on farms by tillage and cultivation of the soil (such as vegetables, fruits, and nuts); forest products; live poultry and bees; and commodities produced by ordinary livestock, live poultry, and bees (such as milk, wool, eggs, and honey), but not including any such products or commodities which, as a result of some treatment, have been so changed as to possess new forms, qualities, or properties, or result in combinations."

2. "We find that the term 'agricultural commodities (not including manufactured products thereof)' as used in section 203 (b) (6) includes: (1) fruits, berries, and vegetables which remain in their natural state, including those packaged in bags or other containers, but excluding those placed in hermetically sealed containers, those frozen or quick frozen, and those shelled, sliced, shredded, or chopped up; (2) fruits, berries, and vegetables dried naturally or artificially; (3) seeds, including inoculated seeds, but not seeds prepared for condiment use or those which have been deawned, scarified

or otherwise treated for seeding purposes; (4) forage, hay, straw, corn and sorghum fodder, corn cobs, and stover; (5) (a) hops and castor beans, and (b) leaf tobacco, but excluding redried tobacco leaf; (6) raw peanuts, and other nuts, unshelled; (7) whole grains, namely, wheat, rye, corn, rice, oats, barley and sorghum grain, not including dehulled rice and oats, or pearled barley; (8) (a) cotton in bales or in the seed, (b) cottonseed and flaxseed, and (c) ramie fiber, flax fiber, and hemp fiber; (9) live poultry, namely, chickens, turkeys, ducks, geese, and guineas; (10) milk, cream, and skim milk, including that which has been pasteurized, standardized milk, homogenized milk and cream, vitamin 'D' milk, and vitamin 'D' skim milk; (11) wool and mohair, excluding cleaned and scoured wool and mohair; (12) eggs, including oiled eggs, but excluding: whole or shelled eggs, frozen or dried eggs, frozen or dried egg yolks, and frozen or dried egg albumin; (13) (a) trees which have been felled and those trimmed, cut to length, peeled or split, but not further processed, and (b) crude resin, maple sap, bark, leaves, Spanish moss, and greenery; (14) sugar cane, sugar beets, honey in the comb, and strained honey."

cious and unreasonable, that it constituted an abuse of discretion and a violation of the Commission's statutory powers, the plaintiff here seeks an injunction to restrain the Commission and the United States from enforcing or recognizing the validity of such report; restraining interference with the plaintiff's proposed transportation of such agricultural commodities (not including manufactured products thereof), and seeks an order of this Court declaring the report of the Commission of April 13, 1951, to be null and void.

The Secretary of Agriculture has intervened, denominating himself "Intervening Plaintiff". He makes common cause with plaintiff in contending that a number of commodities [3] are within the exemption. Several trucking associations, and some sixty southern and western railroad companies, have intervened These intervenors take a contrary view, and support the report of the Interstate Commerce Commission.

■ We are of the opinion that the action may not be maintained, and must be dismissed, for the reason that the report and order of the Interstate Commerce Commission of April 13, 1951, is not an "order" subject to judicial review under any of the statutes cited. The proceeding before the Commission was not an adversary one. The order which initiated it purported to do no more than direct that an investigation be made of the meaning of the statutory language. Notice was given only to the public. When the final report and order was forthcoming some two years later, the only "order" entered was one discontinuing the proceeding and removing it from the Commission's docket. The question is controlled by U. S. v. Los Angeles & S. L. R. Co., 273 U.S. 299, 47 S.Ct. 413, 414, 71 L.Ed. 651, holding a very similar

"order" of the Interstate Commerce Commission which found, after an investigation, the value of certain railroad properties, not to be subject to review. The language of Mr. Justice Brandeis, speaking for a unanimous Court there, aptly describes the order in issue here:

"The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, any thing; which does not grant or withhold any authority, privilege, or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation. This so-called order is merely the formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees. It is the exercise solely of the function of investigation."

The proponents of jurisdiction here rely upon Columbia Broadcasting System v. U. S., 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563. It was there held that an order of the Federal Communications Commission promulgating certain rules and regulations requiring that the Commission deny a license to broadcasting stations under certain circumstances, was subject to judicial review, upon a showing by the complaining party of strong equitable considerations. This authority is clearly distinguishable from the present case. The order there in question was entered in the exercise of the agency's rule-making power. Such orders, together with those fixing rates and those determining controversies be-

---

3. "(1) Slaughtered meat animals and fresh meats;
    (2) Dressed and cut-up poultry, fresh or frozen;
    (3) Feathers;
    (4) Raw shelled peanuts and raw shelled nuts;

(5) Hay chopped up fine;
(6) Cotton linters and cottonseed hulls;
(7) Frozen cream, frozen skim milk, and frozen milk;
(8) Seeds which have been deawned, scarified, or inoculated."

fore the administrative body, have long been recognized as subject to review, U. S. v. Los Angeles & S. L. R. Co., supra.

■ Likewise, the complaining party there showed an immediate and continuing threat of irreparable injury if the order were not reviewed. It is not so here. The statement of plaintiff that it desires to carry for hire most or all of the commodities on the Commission's proscribed list, and that if it does so, the Commission likely will seek injunctive relief to restrain plaintiff, shows no basis for the intervention of a court of equity. Plaintiff will have an adequate remedy in the event of such interference.

It follows that Civil Action 8285 will be dismissed.

*Civil Action 8396:*

A complaint was filed December 23, 1953, with the Interstate Commerce Commission by East Texas Motor Freight Lines, Gillette Motor Transport, Inc., and Jones Truck Lines, Inc., charging that Frozen Food Express was and had been engaged in transporting fresh and frozen dressed poultry, and fresh and frozen meats, and meat products, for hire, between points in interstate commerce not authorized by its certificate of convenience and necessity. Frozen Food readily admitted that it had been so engaged, but defended on the theory that such products all were within the agricultural exemption. The Commission found each of these products not to be within the exemption, and ordered Frozen Food Express to cease and desist from such unauthorized transportation. The present proceeding was filed by Frozen Food Express to review that order.[4]

While the present action was pending in this Court, the Secretary of Agriculture of the United States filed with the Commission his petition for leave to intervene, pursuant to Sec. 1291, of Title 7 U.S.C.A. This request was denied; and

the Secretary appears here as "Intervening Plaintiff", contending (1) that the proceedings before the Commission were null and void by reason of the failure of the Commission to notify him of the pendency thereof, Sec. 1291(a), of Title 7 U.S.C.A.; (2) that the proceedings should be remanded to the Commission by reason of its error of law in having denied him leave to intervene; and (3) that the cease and desist order should be enjoined by reason of the alleged error of the Commission in holding fresh and frozen meats, and fresh and frozen dressed poultry, to be beyond the limits of the agricultural exemption.

The rail carriers and trucking associations which intervened in Civil Action 8285, also appear in this action. They support the Commission, and oppose the position taken by the plaintiff and the Secretary of Agriculture.

Armour & Company, being engaged at various points in the United States in the slaughter of livestock and the killing, dressing, and sale of poultry, has intervened, urging that dressed poultry is an exempt commodity, that meat is not.

■ The position taken by the Secretary of Agriculture that the proceeding before the Commission was null and void in its entirety by reason of the failure of the Commission to give him notice thereof, need not long detain us. The proceeding there was not one with respect to "rates, charges, tariffs, and practices" relating to the transportation of farm products, and hence was not one of which the Secretary was entitled to notice under the statute. Secs. 1291 and 1622, of Title 7 U.S.C.A. U. S. v. Pennsylvania R. Co., 242 U.S. 208, 37 S.Ct. 95, 61 L.Ed. 251; Baltimore & Ohio R. Co. v. U. S., 277 U.S. 291, 292, 48 S.Ct. 520, 72 L.Ed. 885; Missouri Pac. R. R. Co. v. Norwood, 283 U.S. 249, 51 S.Ct. 458, 75 L.Ed. 1010. The Commission likewise did not commit an error of law in denying the Secretary's Petition of Interven-

---

4. Plaintiff has abandoned the contention that meat products are within the agricul- tural exemption, and this commodity will not be further considered here.

tion, filed there while the present proceeding was pending here.

■ Most able and exhaustive treatment is given the question now before us, in so far as it concerns dressed poultry, by Judge Graven of the United States District Court for the Northern District of Iowa, in Interstate Commerce Commission v. Allen E. Kroblin, Inc., 113 F.Supp. 599, 600, affirmed, 8 Cir., 212 F.2d 555, certiorari denied 348 U.S. 836, 75 S.Ct. 49. Reviewing the long struggle between the Interstate Commerce Commission in its efforts to restrict the application of the exemption in question, and the Department of Agriculture and others in seeking to expand it; reviewing the legislative history of the Motor Carrier Act of 1935, and various proposed amendments thereto; and considering the congressional intent which prompted the insertion of the agricultural exemption, Judge Graven concluded that dressed poultry constituted an "agricultural commodity", and did not constitute a "manufactured product thereof". Hence, such commodity was within the exemption. It is sufficient to state that we agree with those conclusions as to fresh and frozen dressed poultry.

■ Counsel for the Commission urges that this Court should disregard the Kroblin case, on the argument that the only question before us is one of the adequacy of the evidence before the Commission. It is said that the order which was entered was one within the general purview of the Commission's authority, and that if its findings are supported by "substantial evidence", this Court has no alternative but to leave it undisturbed. While we do not quarrel with such statement as a general proposition of law, the argument is not convincing in its application to the present record. The primary facts before the Commission were without dispute and were the subject of stipulation. Reduced to simplest form, they showed that before a chicken or duck became "dressed poultry", the bird was killed, his feathers and entrails re-

moved, he was chilled, and in some cases frozen, packaged, etc. In addition, such "facts" consisted of evidence of so-called "expert" nature, that this treatment or processing of the chicken or duck rendered him a "manufactured product".

■ It is apparent that there is only one ultimate finding called for, namely, whether under the type of processing reflected by the record, the product falls within the statutory definition. The question then is a mixed one of law and fact, calling for the application of the processes of legal reasoning and of principles of statutory construction. The fact that the Commission's findings are supported by an "expert" who gives his opinion that a dressed chicken is a manufactured product, does not foreclose the question, nor remove it from the scope of judicial review. Baumgartner v. U. S., 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Lehmann v. Acheson, 3 Cir., 206 F.2d 592; Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217.

■ In our opinion, fresh and frozen meat does not fall within the category either of "ordinary livestock" or of "agricultural commodities", and hence is not within the exemption. Since the enactment of Part II of the Interstate Commerce Act in 1935, motor vehicles used exclusively in carrying "livestock, fish (including shell fish), or agricultural commodities (not including manufactured products thereof)", have been exempt. By amendment in 1940, the term "ordinary" was inserted immediately before the word "livestock". The term "ordinary livestock" is defined in Sec. 20(11) of the Act as "all cattle, swine, sheep, goats, horses, and mules, except such as are chiefly valuable for breeding, racing, show purposes, or other special uses".

Referring only to the live animals, "ordinary livestock" may not be tortured to include the carcasses of slaughtered meat animals, or the meat which is the product of butchering. Meat has been regarded generally in the industry as a

controlled commodity for some twenty years. Congress has dealt with the agricultural exemption on many occasions. Considering the ease with which the Congress might have added appropriate language to evidence its intent to exempt fresh or frozen meat from Interstate Commerce Commission control, if it so desired, the absence of such language indicates that no such intent was entertained.

Nor may meat, fresh or frozen, be considered an "agricultural commodity" for present purposes. The exemption has treated the live meat animal in a separate generic class from "agricultural commodity" since the enactment of the statute; and if the live animal, on entering the slaughter pen or the packing house, is not an "agricultural commodity", we are unable to see how he becomes one on emerging therefrom in the form of beef or pork. The Commission was correct, in our opinion, in holding fresh and frozen meat to be non-exempt.

The enforcement of the order of the Interstate Commerce Commission, MC–C–1605, East Texas Motor Freight Lines, Inc., et al. v. Frozen Food Express, is enjoined and restrained in so far as said order interfered with, enjoins or restrains the plaintiff Frozen Food Express from transporting fresh and frozen dressed poultry in interstate commerce (when the motor vehicles used in carrying such poultry are not used for carrying any other property or passengers for compensation). Other relief sought by plaintiff is denied.

Clerk will notify counsel.

KENNERLY, District Judge (concurring in part and dissenting in part).

I concur with all the foregoing opinion except the decision in Civil Action 8396 with respect to fresh meat and frozen meat. As to that I respectfully dissent.

I think all of Section 303(b) should be given a broad and liberal construction, and that Section 303(b) (6) should be construed as including fresh meat and frozen meat. I think we should not only follow the reasoning of both the District Court and Court of Appeals in the Kroblin case with respect to dressed poultry and frozen dressed poultry, but that what is said is also applicable to fresh meats and frozen meats.