AMERICAN TRUCKING ASSOCIATIONS, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Smith Transport Company Limited et al., Intervening Defendants.

Civ. A. No. 75–254.

United States District Court, District of Columbia.

Oct. 20, 1975.

Peter T. Beardsley, Washington, D.C., for plaintiff.

John H. D. Wigger, Dept. of Justice, Washington, D.C., Kenneth G. Caplan, I.C.C., Washington, D.C., for defendants.

Harry J. Jordon, Washington, D.C., for defendants intervenors.

Before WILKEY, Circuit Judge, and SIRICA and GREEN, District Judges.

## OPINION

JUNE L. GREEN, District Judge.

This action, one of the last to be heard by a three-judge court required by 28 U.S.C. § 2325,[1] seeks to permanently suspend, enjoin, annul and set aside a decision and order of Division 3 of the Interstate Commerce Commission which granted authority to Smithsons Holdings Limited (Smithsons), a subsidiary of Canadian Pacific Limited (Canadian Pacific), for acquisition of Smith Transport (U.S.) Limited. Plaintiff specifically alleges that such decision and order, served October 15, 1974, fails to conform to the Congressional policy set forth in the provisions of Section 5 of the Interstate Commerce Act, 49 U.S.C. § 5, and is contrary to the pronouncements of the Supreme Court applying and interpreting that policy. It further alleges that the decision

---

1. Pub.L. 93–584, § 7, Jan. 2, 1975, 88 Stat. 1918, repealed this provision of Title 28. Such ac-  tions must now be brought in the Court of Appeals. 28 U.S.C. § 2321(a).

and order is arbitrary and capricious, not in accordance with the law and the evidence, is unreasonable, and constitutes an abuse of discretion.

Plaintiff, American Trucking Associations, Inc. (ATA) is the national trade organization of the independent motor carrier industry, representing all types of motor carriers of property. Canadian Pacific is a carrier by rail subject to regulation by the ICC by virtue of its operation of a small amount of trackage in New England and by its ownership of the controlling interest in the Soo Line Railroad Company. It is required to maintain "less than carload" shipment service (LCL) in Canada.[2] Smithsons is a wholly-owned subsidiary of Canadian Pacific. Smith is a motor common carrier generally restricted to international traffic moving between points in the United States and on the international border between the United States and Canada.

In 1958, Canadian Pacific acquired Smithsons. Smithsons, at that time, owned Smith Transport Limited which had small shipment service to and from interior points in both the United States and Canada restricted by ICC certificate to international shipments. Prior to the purchase of Smithsons' stock by Canadian Pacific, Smith Transport was bifurcated. The operating rights in the new company, Smith Transport (U.S.), were purchased by Mr. Phillip Smith. Smith Transport (Canada), owned by Canadian Pacific through Smithsons, was created. The area of operations of each company was restricted to the interior of each country and interchanges occurred at several points on the international boundary. The two companies have maintained a close commercial affiliation since the division in 1958.

Smithsons purchased the stock of Smith (U.S.) on October 25, 1968, after Mr. Smith indicated his desire to leave the trucking business. By trust agreement, legal title was delivered to the Houston National Bank as trustee for the benefit of Smithsons. On November 25, 1968, Smithsons filed its initial petition with the ICC seeking approval of the acquisition under Section 5 and dismissal for lack of jurisdiction because legal ownership, control and actual management of Smith Transport (U.S.) was vested in an unaffiliated non-carrier pursuant to a trust agreement. This argument was rejected by the Hearing Examiner by decision dated March 13, 1970, in which he found that Canadian Pacific exercised control or management within the meaning of 49 U.S.C. § 5(4) and was thus required to obtain prior approval of the acquisition by the ICC under 49 U.S.C. § 5(2)(b).[3] On June 18, 1971, Division 3 affirmed and adopted the Hearing Examiner's decision, an investigation proceeding under Section 5(7) of the Act was instituted, and applicant's petition to supplement its Section 5 application was granted.

A joint hearing was then held on both the Section 5 application and the investigation proceeding which resulted in an Initial Decision dated September 17, 1973, by the Administrative Law Judge (ALJ). In his decision, the ALJ discontinued the investigation in light of the action taken in the Section 5 application. The ALJ granted the Section 5 application after finding that the transaction satisfied the three-prong test of the proviso to Section 5(2)(b) which prohibits Commission approval of an acquisition of a motor carrier by a railroad unless it finds:

(1) that the transaction proposed is consistent with the public interest, and

(2) will enable such carrier to use service by motor vehicle to public advantage in its operation, and

(3) will not unduly restrain competition.

By a decision and order served October 15, 1974, Division 3 of the Commission adopted

---

**2.** LCL refers to shipments of small quantities— up to 10,000 pounds—by railroads. As the economies of transportation have changed, such service in the United States by railroads has become all but extinct, supplanted by truck transportation.

**3.** Both the Administrative Law Judge in his initial decision served September 17, 1973, and Division 3 sustained that conclusion and it no longer is an issue in this case.

the ALJ's recommendation with one minor exception not pertinent to this case.[4]

A petition filed by plaintiff seeking a finding that the proceeding involved an issue of general transportation importance was denied by the Commission by an order served November 21, 1974. On December 13, 1974, the transaction authorized by the ICC was consummated, the trust was dissolved and the stock of Smith Transport (U.S.) was transferred to Smithsons. On February 25, 1975, plaintiff commenced the instant suit seeking permanently to enjoin and set aside the Commission report and order approving the transaction.

While differing in language used, the parties essentially agree in the statement of the central issues before the Court. These issues are:

(1) Whether the ICC may approve an acquisition and control of a motor carrier by a railroad pursuant to 49 U.S.C. § 5(2)(b) without imposing "auxiliary to and supplemental of" restrictions on the operations of the motor carrier to be acquired?

(2) If such approval may lawfully be given, was the Commission's grant of Canadian Pacific's application based on proper findings supported by substantial evidence of record?

All parties recognize the legislative policy underlying the proviso of Section 5(2)(b) to be the promotion and preservation of the motor carrier mode of transportation and the prevention of destructive competitive practices among motor carriers and with railroads. However, it is the Commission's changing implementation of this proviso that presents the crux of the controversy in this case. Plaintiff ATA contends that while unrestricted operating authority may be granted in a Section 207 application[5] to a motor carrier affiliate of a railroad upon a showing of "special circumstances", a corresponding Section 5 application may only be granted to the extent that the acquired motor carrier's operations are "auxiliary to and supplemental of" the railway parent's operations.

Initially, the Commission's policy was to approve only those Section 5 acquisitions where the motor service was closely tied to the rail operations; that is, where motor carriers were "auxiliary to and supplemental of" rail operations. The Commission approved only acquisitions of motor carriers that operated along the same route network as the railroad and did not extend operations into other areas not serviced by the railway parent. See, *Pennsylvania Truck Lines, Inc.—Control-Barker,* 1 M.C.C. 101 (1936), supplemented 5 M.C.C. 9 (1937); *Kansas City S. Transport Co., Inc. Com. Car. Application,* 10 M.C.C. 221 (1938), 28 M.C.C. 5 (1941). Plaintiff supports this early Commission interpretation of Section 5(2)(b), urging it as the proper view of the phrase "its operations" found in the second prong of the Section 5(2)(b) proviso.

The Commission followed the policy of imposing the "auxiliary to and supplemental of" restrictions until 1954 when the policy began to change. In *Rock Island Motor Transit Co.—Purchase—White Line Motor Freight,* 40 M.C.C. 457 (1946), 55 M.C.C. 567 (1949), a wholly-owned subsidiary of the Chicago Rock Island and Pacific Railroad sought authority under Section 5(2)(b) to acquire certain unrestricted motor carrier authority. In approving the acquisition, the Commission imposed "auxiliary to or supplemental of" restrictions. This decision

4. The Division corrected the ALJ's inaccurate reference to the operations to be purchased as "substituted motor-for-rail operations". "Substituted motor-for-rail operations" is a term of transportation art referring to the actual replacement by a more efficient motor carrier service of an existing rail service, and is properly sought in a Section 207 application for authority to conduct new motor operations (49 U.S.C. § 307), not through a Section 5 purchase of existing authority and operations.

5. Section 207 provides for the issuance of certificates of public convenience and necessity to qualified applicants. While that section does not contain the proviso found in Section 5(2)(b), the Commission has read the "auxiliary to and supplemental of" criteria into Section 207 where a motor carrier affiliated with a railroad is the applicant.

was affirmed by the Supreme Court in *United States v. Rock Island Motor Transit Co.,* 340 U.S. 419, 71 S.Ct. 382, 95 L.Ed. 391 (1951). Following this, the railway subsidiary filed a Section 207 application for a certificate of public convenience and necessity authorizing unrestricted operations. In a report by the entire Commission, unrestricted motor carrier rights were granted in *Rock Island Motor Transit Co. Com. Car. Application,* 63 M.C.C. 91 (1954). The key language of this report which created the "special circumstances" exception for Section 207 was that the Commission "may issue certificates to motor-carrier affiliates of railroads with or without restrictions as the circumstances may require." (63 M.C.C. at 101). The Supreme Court approved this "special circumstances" exception in the Section 207 context in *American Trucking Assns. v. United States,* 355 U.S. 141, 78 S.Ct. 165, 2 L.Ed.2d 158 (1957).

The Commission has frequently issued certificates to railroad subsidiaries in Section 207 applications without restrictions where "special circumstances" exist; that is, where unrestricted operations by the rail-owner carrier are found on specific facts and circumstances to be in the public interest. The propriety of the Commission's policy has been specifically approved by the Supreme Court. *American Trucking Assns. v. United States,* 364 U.S. 1, 80 S.Ct. 1570, 4 L.Ed.2d 1527 (1960) (Section 209 application).

The application of a "special circumstances" exception in a Section 5(2)(b) acquisition proceeding has not been subjected to direct judicial scrutiny.[6] However, the Commission itself has consistently stated that it need not impose "auxiliary to and supplemental of" restrictions on rail carriers seeking approval of Section 5 applications where unrestricted grants are warranted by the factual situation and where the statutory standard of Section 5(2)(b) is otherwise satisfied. See, *Burlington Truck Lines, Inc.—*

*Purchase—Pirnie,* 85 M.C.C. 363 (1960); *Canadian National Transportation, Ltd.—Investigation of Control,* 109 M.C.C. 392 (1970).

■ Plaintiff attempts to dismiss the Section 5 cases unfavorable to its position where auxiliary and supplemental restrictions were not imposed, arguing that they constituted unlawful departure from Congressional policy and therefore not valid precedent for the ICC's action in the instant case. It is well settled, however, that a construction given to a statute by the administrative agency whose duty it is to carry out its provisions is entitled to great weight and should not be overruled unless clearly wrong. *Perkins v. Matthews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); *Investment Co. Institute v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971); *Billings v. Truesdell,* 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944). This limitation on the Court's power of review has been specifically recognized in many decisions involving the Interstate Commerce Act. *Chicago St. P.M. & O. Ry. Co. v. United States,* 50 F.Supp. 249 (D.Minn. 1943), aff'd, 322 U.S. 1, 64 S.Ct. 842, 88 L.Ed. 1093 (1944); *I.C.C. v. Allen E. Kroblin, Inc.,* 212 F.2d 555 (8th Cir. 1954), *cert. denied,* 348 U.S. 836, 75 S.Ct. 49, 99 L.Ed. 659 (1954), aff'g 113 F.Supp. 599 (N.D.Iowa 1940).

■ Thus, having determined that it is properly within the discretion of the Commission to approve acquisitions of motor carriers by railroads where special circumstances exist, it is necessary to consider whether the Commission's application of the special circumstances exception was appropriate and whether the applicants otherwise satisfied the standards of Section 5(2)(b). Plaintiff contends that "special circumstances" sufficient to warrant approval of an acquisition without restrictions may be shown only where the services of exist-

---

**6.** The question was averted in *American Trucking Assns. v. Frisco Co.,* 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958) where unconditional approval was inadvertently given to a Section 5 acquisition. The Supreme Court approved the

Commission's retraction and correction of the certificate to include restrictions. The question posed in this case is noted in footnote 5 at page 140, 79 S.Ct. 170 where the Court expressly intimated no position with regard to it.

ing motor carriers in the area involved in the proceeding are inadequate or where the carriers furnish such services only at their convenience. Plaintiff also contends that a mere showing of potential economies or of present financial distress is insufficient to support a finding of "special circumstances".

In Section 207 applications the Commission, with the approval of the Supreme Court, has consistently held that "special circumstances" can only be established upon a showing that a grant of operating authority to a motor subsidiary or affiliate of a railroad will not result in an undue restraint of competition and that the public convenience and necessity require such operation which the authorized independent motor carriers have not furnished except when it suited their convenience. See, *Rock Island Motor Transit Co.*, 63 M.C.C. 91 (1954) aff'd, *American Trucking Assns. v. United States,* 355 U.S. 141, 78 S.Ct. 165, 2 L.Ed.2d 158 (1957). In Section 5 proceedings, however, the test is not entirely one of public need for the proposed service or the adequacy of existing service. Defendant-intervenors and defendants cite numerous decisions which reject plaintiff's rigid test and leave the finding of special circumstances to the particular facts of the case. See, *Rio Grande Motor Way, Inc.—Control and Merger,* 87 M.C.C. 479 (1961); *Rock Island Motor Transit Co., Extension—Oakbrook, Ill.,* 91 M.C.C. 161 (1962).

■ In this instance the Commission has found "special circumstances" to exist because of the continuing responsibility of Canadian Pacific to transport LCL traffic and the absence of rail outlets for such traffic in the area served by Smith Transport (U.S.), coupled with the finding that approval of the transaction would be to the public advantage and in no way unduly restrain competition. What constitutes "special circumstances" is dependent upon the facts of each individual case. The scope of judicial review of I.C.C. orders is limited to a determination of whether the Commission's order was within the agency's statutory power and based upon appropriate findings supported by substantial evidence. *Illinois C.R. Co. v. Norfolk & W.R. Co.,* 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966). The finding by Division 3 of "special circumstances" warranting approval of the instant acquisition without restrictions is clearly supported by substantial evidence.

Plaintiff contests only the second of the three findings that the Commission made as required by the proviso of Section 5(2)(b). It does not contest the Commission's finding that the acquisition "will be consistent with the public interest", nor the finding that the acquisition "will not unduly restrain competition". However, plaintiff contends that the Commission's finding that the acquisition of Smith Transport (U.S.) by Smithsons "will enable the carrier to use service by motor vehicle to public advantage in its operation" was erroneous.

■ Plaintiff argues that Section 5(2)(b) requires that motor operations of the railroad be used to public advantage in Canadian Pacific's United States operations, and since Smith Transport (U.S.) has no relationship with either the Soo Line in Michigan or the railroad's trackage in Maine or Vermont, it fails to meet the statutory criterion. An analysis of the detailed decision of the ALJ establishes that the "public advantage in its operations" test was carefully considered and applied to the evidence of record. Likewise, the Commission considered both the change in the railroad's position caused by the decline of LCL train service in the United States and the testimony of the applicant's traffic consultant prior to adopting the ALJ's recommendation. The evidence submitted to the Commission clearly supports the Commission's finding that Canadian Pacific will be able to use the services of Smith Transport (U.S.) to public advantage in its operations. The weight of the evidence submitted to the Commission is a matter for the Commission, not for the Courts. The Commission's findings with respect to the acquisition at issue were supported by substantial evidence and its decision is sustained.