MILK TRANSPORT, INC., Plaintiff,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Defendants,
and
Alterman Transport Lines, Inc. and Re-
frigerated Transport Co., Inc., Inter-
vening Defendants.

No. 3–60–Civ.–82.

United States District Court
D. Minnesota,
Third Division.

Dec. 19, 1960.

Clay R. Moore and Donald A. Morken, Minneapolis, Minn., for plaintiff.

Robert W. Ginnane, Gen. Counsel, and Fritz R. Kahn, Washington, D. C., for Interstate Commerce Commission.

Robert A. Bicks, Asst. Atty. Gen., John H. D. Wigger, Washington, D. C., and Fallon Kelly, U. S. Atty., St. Paul, Minn., for United States.

Frank B. Hand, Jr., and Daniel B. Johnson, Washington, D. C., for intervening defendants.

Before SANBORN, Circuit Judge, and NORDBYE and DEVITT, District Judges.

DEVITT, District Judge.

This is an appeal from an order of the Interstate Commerce Commission dismissing plaintiff's applications for certificates to transport citrus juices, in bulk, in tank vehicles, under the "grandfather" and "interim" clauses of the Transportation Act of 1958. Plaintiff asks this statutory three-Judge Court, 28 U.S.C. § 2325, to set aside the order and enjoin the Commission by mandatory injunction to hear and determine plaintiff's applications.

This controversy stems from plaintiff's submission of Section 7(c), 72 Stat. 573, "grandfather" and "interim" applications to the Interstate Commerce Commission seeking authority to transport citrus juices in tank vehicles from points in Florida and Texas to points in several northern states. The applications were dismissed by an order dated September 4, 1959, without a hearing. Plaintiff's petition for reconsideration was denied by the Commission on December 22, 1959.

The broad issue is whether an interstate commerce motor carrier in bona fide transportation of citrus juices prior to the 1958 Transportation Act has an absolute right, under the "grandfather" clause of that Act, to continue transporting citrus juices without obtaining a Certificate of Public Convenience and Necessity from the Commission.

A short explanation of the issue in the light of the undisputed facts may be helpful.

The Interstate Commerce Act provides in Part II, 49 U.S.C.A. §§ 301–327, for comprehensive regulation of motor carriers operating in interstate commerce. Basic to the Act is the prohibition contained in Sections 206 and 207 (49 U.S.C.A. §§ 306, 307), against motor carriers operating in interstate commerce without holding a Certificate of Public Convenience and Necessity. This certificate requirement is waived in the situations set forth in Section 203(b), (49 U.S.C.A.

§ 303(b) ). The exemption involved in this controversy relates to agricultural commodities and as pertinent reads as follows:

"Sec. 203

"(b) Nothing in this part, except the provisions of Section 204 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * *

"(6) Motor vehicles used in carrying property consisting of * * agricultural (including horticultural) commodities (not including manufactured products thereof), * * "

Much litigation developed over the years as to whether certain products were agricultural commodities and hence "exempt" from the certificate requirement or were "manufactured products thereof" and thus "non exempt" from the requirement. The principal question involved the determination of how much processing could be done to an agricultural commodity before it changed to a "manufactured product thereof."

Section 7(a) of the 1958 Transportation Act amended Section 203(b) (6), (49 U.S.C.A. § 303(b) (6) ), and made more specific the provisions concerning the "exempt" or "non exempt" status of many commodities. The pertinent parts of the amended section are contained in the footnote.[1] Citrus juices are listed as "non exempt" in Commission Ruling 107

---

[1] "(b) Nothing in this part, except the provisions of Section 204 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * *

"(6) motor vehicles used in carrying property consisting of ordinary livestock, * * *, or agricultural (including horticultural) commodities (not including manufactured products thereof), * . * *

"*Provided,* That the words 'property consisting of ordinary livestock, * * *, or agricultural (including horticultural) commodities (not including manufactured products thereof)' as used herein shall include property shown as 'Exempt' in the 'Commodity List' incorporated in ruling numbered 107, March 19, 1958, Bureau of Motor Carriers, Interstate Commerce Commission, but shall not include property shown therein as 'Not Exempt': *Provided further, however,* That notwithstanding the preceding proviso the words 'property consisting of ordinary livestock, * * *, or agricultural (including horticultural) commodities (not including manufactured products thereof)' shall not be deemed to include frozen fruits, frozen berries, frozen vegetables, cocoa beans, coffee beans, tea, bananas, or hemp, and wool imported from any foreign country, wool tops and noils, or wool waste (carded, spun, woven, or knitted). * * * "

incorporated in the amended section. They have therefore been "non exempt" commodities since the 1958 Act became law. Consequently, a motor carrier operator who now desires to transport citrus juices in interstate commerce is required to have a Certificate of Public Convenience and Necessity from the Commission unless the carrier can prove that it was in bona fide transportation of citrus juices prior to the 1958 Act and that it has a right to continue transporting citrus juices by virtue of the "grandfather" clause enacted in Section 7(c) of the 1958 Transportation Act. The pertinent provisions of that section read as follows:

> " * * * if any person * * * was in bona fide operation on May 1, 1958, * * * in the transportation of property for compensation by motor vehicle *made subject to* the provisions of Part II of that Act by paragraph (a) of this section, * * * the Interstate Commerce Commission shall without further proceedings issue a certificate or permit * * * " [Emphasis supplied.]

It is undisputed that plaintiff was a bona fide transporter of citrus juices prior to 1958. All parties agree that a basic requirement of the right to continue hauling a particular commodity under the "grandfather" clause is that the commodity must have been "exempt" prior to the 1958 Act and was made "non exempt" by the Act.

Plaintiff contends since there's no dispute that it was a bona fide hauler of citrus juices prior to 1958, the only issue for this court is whether citrus juices were "exempt" commodities prior to the 1958 Transportation Act amendment of Section 203(b) (6). If citrus juices were exempt, plaintiff claims the Commission must under the "grandfather" clause issue plaintiff a certificate without proof of public convenience and necessity. Plaintiff argues that even

though the Commission had held citrus juices to be "non exempt" prior to 1958 in Watkins Motor Lines, Inc., Interpretation, 64 M.C.C. 455 (Div. 1, 1955), later U. S. Supreme Court and Federal District Court cases, see East Texas Motor Freight Lines v. Frozen Food Express, 1956, 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917; Frozen Food Express v. United States, D.C., 148 F.Supp. 399, affirmed Akron, C. & Y. R. Co. v. Frozen Food Exp., 1957, 355 U.S. 6, 78 S.Ct. 38, 2 L.Ed.2d 22; I.C.C. v. Allen E. Kroblin, Inc., D.C.1953, 113 F.Supp. 599, make it clear that citrus juices would have been declared "exempt" had an appropriate controversy reached the courts.

The defendants contend the issue of whether citrus juices were "exempt" prior to 1958 is not relevant to this proceeding. They argue that "grandfather" rights were conferred only on the eleven commodities [2] specifically listed in Section 7(a) as now being "non exempt." Defendants argue that the wording of Section 7(c) plus the Congressional intent as evidenced by committee reports indicates that only the eleven commodities listed were "made subject to" the certificate requirement of Part II of the Act, and consequently "grandfather" rights were given only to carriers of those specific commodities. Since citrus juices were not included in the commodities specifically listed in Section 7 (a), they submit the question of whether citrus juices were "exempt" prior to 1958 is irrelevant.

We agree with the defendants that the first issue to be met is whether citrus juices were covered by the "grandfather" clause. If citrus juices were not included, we need not determine whether they were "exempt" prior to 1958.

It is axiomatic that Congress could include or exclude any commodities from the benefit of the "grandfather" clause. Congress could have refused to include any "grandfather" benefits in the 1958

---

**2.** "frozen fruits, frozen berries, frozen vegetables, cocoa beans, coffee beans, tea, bananas, or hemp, and wool imported from any foreign country, wool tops and noils, or wool waste (carded, spun, woven, or knitted)"

Act. Consequently, assuming that a particular commodity had been specifically held "exempt" prior to 1958 and then declared "non exempt" by the 1958 Act, Congress could have excluded this particular commodity from "grandfather" rights while giving the benefit to other commodities. We must therefore look to the statute to determine whether citrus juices were accorded "grandfather" rights.

The essential provisions of Sections 7(c) and 7(a) have been previously quoted in this memorandum. The primary question in resolving this dispute is the determination of what the words "made subject to" mean in the context of the statute. Plaintiff contends the phrase means that all commodities in Section 7(a), including those in Ruling 107 in the first proviso are subjected to the requirements of Part II of the Act. Defendants argue that the only items "made subject to" Part II are the eleven specified commodities in the second proviso. No determination as to the status of several of these commodities had ever been made, but Ruling 107 listed most of the eleven items as having been found "exempt" by the courts or the Commission, and defendants contend that these items were being brought back under regulation by Section 7(a). They argue that Congress gave "grandfather" rights only to carriers which had been legitimately hauling these eleven commodities.

We agree with the defendants' interpretation of Section 7(c). Congress did not have to make the items in Ruling 107 subject to the Act, with the exception of the eleven commodities which had either been declared "exempt" or on which no ruling had been made. It is perhaps true, as plaintiff argues, that Congress would have specifically afforded "grandfather" rights to citrus juices had they been declared "exempt" in any appropriate controversy which reached the courts. Remembering, however, that Congress could limit "grandfather" benefits as it chose, it matters only that Congress gave its approval to the Commission's characterization of citrus juices as "non exempt" commodities. Citrus juices had been held "non exempt" prior to 1958 by the Commission, Watkins Motor Lines, Inc., Interpretation, 64 M.C.C. 455 (Div. 1, 1955), and Congress was providing "grandfather" rights only for carriers of those eleven commodities which had been "exempt" and were being specifically made "non exempt."

Where the terms of a statute are not clear, we may look to the legislative history in an attempt to determine the intent of Congress. United States v. International Union, etc. UAW-CIO, 1957, 352 U.S. 567, 77 S.Ct. 529, 1 L.Ed. 2d 563; Woods v. Western Holding Corp., 8 Cir., 1949, 173 F.2d 655, 659. The committee reports clearly indicate Congressional intent in the enactment of the "grandfather" clause. The report of the House Committee on Interstate and Foreign Commerce, H.R.Rep. No. 1922, 85th Cong. 2d Sess. 17 (1958) reads in part as follows:

"This amendment would halt further expansion of the scope of the exemption, and it would return to economic regulation the transportation of frozen fruits, frozen berries, frozen vegetables, coffee, tea, cocoa, hemp, imported wool and certain categories of domestic wool. * * *

"Any person engaged on June 1, 1958, in trucking *the aforementioned commodities* which are returned to regulation by this amendment would be entitled upon application to a certificate or permit * * *."
[Emphasis supplied.]

The conference report, H.R.Rep. No. 2274, 85th Cong., 2d Sess. 15 (1958) indicates further Congressional intent to provide "grandfather" benefits only for the mentioned commodities as follows:

"Under the conference agreement the agricultural commodities exemption is frozen in accordance with ruling 107, referred to above, with the following modification, which is a compromise between the Senate and House provisions: Returned to economic regulation is the trans-

portation by motor vehicle of frozen fruits, frozen berries, frozen vegetables, cocoa beans, coffee beans, tea, bananas, hemp, wool imported from any foreign country, wool tops and noils and wool waste which has been carded, spun, woven, or knitted * * *

"Under the House amendment any person engaged on June 1, 1958, in trucking the *aforementioned commodities* which are returned to economic regulation by this amendment would be entitled, upon application, to a certificate or permit allowing him, under regulation, to continue the transportation of the same commodities within the same areas or between the same points. The Senate bill used the date January 1, 1958. The conference agreement uses the date May 1, 1958." [Emphasis supplied.]

It is clear from this language that Congress intended only the eleven specified commodities, and not including citrus juices, to have "grandfather" benefits.

Plaintiff also argues that the Commission itself, Inland Motor Freight "Grandfather" Application; No. MC59077 (Sub. No. 33), 14 Fed.Carr. Cas., Para. 35,004 (C.C.H.) (Div. 1, Oct. 1960), determined that the words "made subject to" should not be read in a restrictive sense. That decision relates solely to the situation where an otherwise "exempt" commodity loses its exemption when hauled with a "non exempt" commodity in the same vehicle at the same time. The Inland case is not applicable to this controversy.

Plaintiff lastly contends that the scope of review is limited to a considera-

tion of the grounds set forth in the Commission's order for its decision. Plaintiff argues that the Commission order of September 4, 1959 [3] dismissed plaintiff's applications solely for the reason that citrus juices were not "exempt" commodities prior to the 1958 Transportation Act. Consequently, plaintiff submits that, under the holding in the Chenery cases, S. E. C. v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626, and S. E. C. v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995, this court cannot uphold the Commission on grounds other than those specified in the order.

In the first Chenery case, 1943, 318 U.S. 80, 63 S.Ct. 454, 462, the Supreme Court reviewed an order of the Securities and Exchange Commission which refused to allow preferred stock acquired by management officials during a reorganization period to participate in the reorganization on an equal footing with all other preferred stock. The corporation involved was registered under the Public Utility Holding Company Act and the Commission had to determine whether the terms of the new stock issuance were "fair and equitable" or "detrimental to the interests of investors" within the meaning of the Act. The Commission based its order on principles of equity as announced by the courts, but the Supreme Court held that the authorities cited were not sufficient to sustain the order and the case was remanded to the Commission.

The first Chenery case did hold that a reviewing court must judge an agency order only on the grounds on which the order was based, but the court limited this rule to determinations which the administrative agency alone is author-

3. " * * * It further appearing, That in Watkins Motor Lines, Inc., Interpretation of Certificates, 64 M.C.C. 455, it was found that the term 'agricultural commodities (not including manufactured products thereof)' as used in Section 203 (b) (6) of the Interstate Commerce Act does not include citrus juices;

"*And it further appearing,* That as citrus juices, in bulk, in tank vehicles, was not included in the term 'agricultural (including horticultural) commodities (not including manufactured products thereof)', as used in Section 203(b) (6) of the Interstate Commerce Act prior to the Transportation Act of 1958:

"*It is ordered,* That the applications * * * be, and they are hereby, dismissed * * *"

ized to make. The court, 318 U.S. 80, 88, 63 S.Ct. 454, 459, used these words:

"In confining our review to a judgment upon the validity of the grounds upon which the Commission itself based its action, we do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.' Helvering v. Gowran, 302 U.S. 238, 245 [58 S.Ct. 154, 158, 82 L.Ed. 224]. The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate. But it is also familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury. Like considerations govern review of administrative orders. If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative Agency."

We are not concerned here with a judgment which only the Interstate Commerce Commission can make. The expertness of the Commission does not make it better qualified than this court to interpret the phrase "made subject to" involved in this action. The inter-

pretation here is wholly different from what it is in the case where Congress specifically entrusts an administrative agency, because of its special competence, with the task of defining or interpreting general words [4] or setting up standards or rules of conduct. We are interpreting the scope of a federal statute and this task is not peculiar to an administrative agency.

Having decided that the transportation of citrus juices was not afforded "grandfather" rights under Section 7(c) of the 1958 Transportation Act, we need not determine whether citrus juices were "exempt" commodities prior to 1958.

Plaintiff's complaint is dismissed.

---

4. Such as the words involved in the Chenery case—"fair and equitable" or "detrimental to the interests of investors."