**HALE DISTRIBUTING COMPANY, Inc.,**
a corporation, Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants.

Civ. No. 62–88.

United States District Court
S. D. California,
Central Division.

July 10, 1963.

William J. Augello, Jr., New York City, Sheppard, Mullin, Richter & Hampton, Wesley L. Nutten, III, Los Angeles, Cal., for plaintiff.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., Los Angeles, Cal., for the United States.

Robert W. Ginnane, Gen. Counsel, Fritz R. Kahn, Atty., I. C. C., Washington, D. C., for Interstate Commerce Commission.

Before BARNES, Circuit Judge, and STEPHENS and CARR, District Judges.

PER CURIAM.

Plaintiff brings this action pursuant to 49 U.S.C. §§ 17(9), 305(g), 305(h), 5 U.S.C. § 1009 and 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325, to permanently enjoin, set aside or annul certain orders made by defendant Interstate Commerce Commission (hereinafter referred to as Commission), in the case entitled, Hale Distributing Company, Inc., Common Carrier "Grandfather" Application, MC–118127, decided March 28, 1961 (not printed in full).

The Commission's orders under review granted in part and denied in part plaintiff's application for motor carrier operating authority under the "grandfather" clause of section 7(c) of the Transportation Act of 1958, 72 Stat. 573, following 49 U.S.C. § 303.

Plaintiff is engaged in motor carrier operations as a common carrier for hire in interstate and foreign commerce and maintains its principal office in Los Angeles, California.

Part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq., provides for regulation of motor carriers operating in interstate and foreign commerce. However, section 203(b) (6) of that Act exempts from regulation "motor vehicles used in carrying property consisting of * * * agricultural commodities (not including manufactured products thereof) * * *."[1] Subsequently the Transportation Act of 1958, 72 Stat. 574 following 49 U.S.C. § 303, was adopted, Section 7 providing that on and after

[1] After the Commission had held frozen agricultural commodities were "manufactured products" in Determination of Exempted Commodities, 52 M.C.C. 511 (1951) there followed a series of court decisions overruling the Commission's determination. Frozen Food Express v. United States, 128 F.Supp. 374 (S.D.Tex. 1955), rev'd in part 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730 (1956), aff'd in part sub nom. East Texas Motor Freight Lines, Inc. v. Frozen Food Express, 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917 (1956), further consideration 148 F. Supp. 399 (S.D.Tex.1956), aff'd per curiam 355 U.S. 6, 78 S.Ct. 38, 2 L.Ed. 2d 22 (1957); Home Transfer & Storage Company v. United States, 141 F.Supp. 599 (S.D.Wash.1956), aff'd per curiam 352 U.S. 884, 77 S.Ct. 129, 1 L.Ed.2d 82 (1956); Interstate Commerce Commission v. Allen E. Kroblin, Inc., 113 F. Supp. 599 (N.D.Ia.1953), aff'd 212 F.2d 555 (8th Cir.1954), cert. den. 348 U.S. 836, 75 S.Ct. 49, 99 L.Ed. 659 (1954).

August 12, 1958, persons engaged in the transportation of frozen fruits, berries or vegetables would require operating authority from the Commission. Section 7(c) provides, however, that any person in bona fide operation on May 1, 1958 and since that time "within any territory" in the transportation of such products as a common for-hire carrier in interstate commerce is entitled to file an application with the Commission for a certificate authorizing continuation of those operations. This is referred to as a "grandfather" provision.

█ On December 9, 1958, plaintiff filed an application, as amended, pursuant to the "grandfather" provision just described, seeking a certificate of public convenience and necessity authorizing the continuance of operations as a common carrier in interstate commerce over irregular routes transporting frozen fruits, berries and vegetables and, when transported in the same vehicle therewith, frozen fish and poultry [2] from and to designated points. The application was opposed by various motor and rail carriers.

The application was heard before an examiner of the Commission on February 25, 1960, at Los Angeles, California, and on June 10, 1960, the examiner served a report recommending a grant of substantially all of the authority sought in the amended application. Exceptions to the examiner's report were filed by the protestants on July 14 and 15, 1960, and the plaintiff replied on August 8, 1960.

On March 28, 1961, Division 1 of the Commission (Commissioner Webb dissenting) issued a report and order, here assailed, severely limiting the authority recommended by the examiner, granting a portion of the application and denying the remainder. As to the claims denied, the Commission found that the plaintiff failed to prove the existence of bona fide

operations on May 1, 1958, and continuously thereafter.

Plaintiff petitioned the Commission for reconsideration of the report and order on May 8, 1961, which was denied by the entire Commission on August 28, 1961. Upon institution of this action, the Commission on January 28, 1962, ordered the effective date of the assailed report and order indefinitely postponed.

Plaintiff has been engaged in motor carrier operations since 1955. Its potential traffic is limited to frozen fruits, berries, vegetables, seafood and poultry, any of which it has held itself out to haul in straight or mixed truckloads. The Examiner's Report indicates that for the most part these perishable commodities are somewhat seasonal and that to arrange loads practical for movement, plaintiff's past operations have consisted principally of mixed shipments requiring multiple stops for pick up and delivery in the territories served. Plaintiff contends the traffic is greatly dependent upon weather, crop and marketing conditions as well as the availability of cold storage facilities at destination points, the result being that origin and destination points constantly change from year to year.

Plaintiff claims that the evidence of representative shipments transported on and since the statutory date reveals that plaintiff conducted a coast-to-coast operation as follows:

(a) From California origins, frozen fruits, berries, vegetables, fish and poultry are transported to Texas destinations and points in Arizona, Nevada and New Mexico intermediate thereto.

(b) Empty vehicles are then loaded with shrimp through its Brownsville office for delivery to midwestern and northeastern destinations.

(c) Trucks unloaded in the northeast are loaded through its Gloucester, Mass. office with frozen fruits, berries, vegeta-

---

**2.** Although "exempt" commodities in themselves, frozen fish and poultry, if transported with a "regulated" commodity, must also be subjected to the Commission's regulations. Lewis Common Carrier "Grandfather" Application, 82 M.C.C. 755, 758 (1960).

bles, fish and poultry destined to California and intermediate points in Texas, Arizona, New Mexico and Nevada. Partially loaded trucks are filled out with fish.

(d) Trucks unloaded in the midwest are loaded through the Los Angeles office with frozen fruits, berries and vegetables in Michigan and Wisconsin and "filled out" with fish at Chicago and other midwestern points for delivery to California destinations and points intermediate thereto in Arizona and Nevada.

To establish that the shipments from and to the points outlined above were continuous and sufficient in number on and after May 1, 1958, so as to warrant the issuance of the authority requested, plaintiff presented the testimony of its President and General Manager and abstracts of shipments moved from 1955 to 1959, both inclusive. Moreover, this evidence was presented to the Commission to aid them in their consideration of the special or unusual characteristics of the transportation service rendered insofar as this is relevant to the territorial scope of operations which the Commission may authorize. Alton R. Co. v. United States, 315 U.S. 15, 20, 62 S.Ct. 432, 86 L.Ed. 586 (1942).

It is plaintiff's contention that the Commission arbitrarily restricted proof of its operations to shipments transported in 1957 and 1958 and that in so doing, plaintiff's showing in support of its application has been restricted to one principal movement of these commodities prior to the May 1, 1958 date and one subsequent to that date. If plaintiff is correct in its contention that origin and destination points change frequently and unpredictably from year to year in the normal course of business, the Commission's failure to consider data covering the years 1955, 1956, 1959 and 1960 has prevented plaintiff from obtaining a determination with regard to the full scope

of its service and its unpredictable and shifting nature.

■ It is not clear from the record whether or not the Commission did in fact consider, or, if so, to what extent it did consider plaintiff's shipments subsequent to 1958. The Report of the Commission at page 3 states:

"Applicant (plaintiff) further urges, however, that the examiner should have considered shipments made by it subsequent to December 31, 1958, and as a result, should have recommended additional authority. We will not consider this contention as applicant did not file timely exceptions to the examiner's recommended order."

However, the Appendix to the Commission's Report includes in the list of plaintiff's shipments a designation of all shipments occurring in 1959, and the Commission's grant of authorization to continue operations appears to reflect at least a limited consideration of the 1959 shipments.[3] This uncertainty in the findings makes it difficult to ascertain what standards were used in the determination and whether the findings were supported by the evidence. Findings of this kind are insufficient. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 489, 62 S.Ct. 722, 729, 86 L.Ed. 971 (1942).

It is clear that the operations of plaintiff in the years 1955 and 1956 were not considered by the Commission. At page 6, the Commission's Report states:

"The shipments shown which moved in 1955 and 1956 are too remote to have any probative value respecting an evaluation of applicant's operation during the critical period, and will not be considered herein. Compare Refrigerated Dispatch Common Carrier Application, 83 M.C.C. 411."

3. The authorization includes Gloucester, Mass. to Phoenix, Ariz., Gloucester, Mass. to Albuquerque, N. M., and Boston Mass. to Phoenix, Ariz. In each instance the only shipment subsequent to May 1, 1958, occurred in 1959. Since the Commission required proof of a shipment prior and subsequent to May 1, 1958, the 1959 shipments must have been considered at least to this extent.

Commissioner Webb, dissenting in part, expressed his disapproval of the Commission's report in the following language:

"* * * In particular, I do not favor the arbitrary rule applied in this and similar proceedings to the effect that shipments moving in 1956 are too remote in time to have any probative value respecting applicants' operations during the critical period."

The Refrigerated Dispatch case cited as authority for the exclusion was a situation where the applicant transported 12 shipments of bananas in the years 1954 and 1956 and the only other shipment was on October 21, 1958. The Commission concluded that the shipments were too remote from the statutory date to establish that bona fide operations were being conducted on such date. To apply the result in the Refrigerated Dispatch case to the case at bar, particularly where the commodity involved may have wholly dissimilar transportation and marketing characteristics does indeed seem to be truly arbitrary. The record in this case shows that many shipments of these commodities were made between 1956 and May 1, 1958, unlike the Refrigerated Dispatch case, where no corresponding shipments were made between those dates.

■ Applicant is entitled to continue its operations as they existed on May 1, 1958. What is too remote to have probative value in one case may not be so in another. The question of remoteness should be considered in the context of the case at hand.

■ The 1955 and 1956 shipments support and aid in evaluating plaintiff's contention that the origin and destination points in its principal operations change from year to year in the normal course of business and are attributable to the special characteristics of the traffic of commodities in question. Winter Garden Company, Inc. v. United States, 211 F.Supp. 280, 288 (E.D.Tenn.1962).

The record of 1955 and 1956 shipments appears to be sufficient to support a conclusion that the operation was not point-to-point, but area-to-area. If this is in fact the case, an order from the Commission authorizing point-to-point service would change the character of the operation in a manner not authorized by law. The Commission should have considered the proffered evidence for what bearing it might have upon the character of the operation. As to what points were being served on May 1, 1958, if the operation is a point-to-point operation, or what areas were being served on May 1, 1958, if the operation was an area-to-area operation, the shipments in years 1955 and 1956 may or may not be too remote, but such a determination is not to be treated as a question of law heretofore decided in prior cases because it is a question of fact which must turn upon the circumstances of the case at bar and not those of an unlike previous case.

■ It seems appropriate to note that statewide authority is not the only alternative to point-to-point authority if it appears that the applicant's operation was from market area to market area with stops for pick up and delivery at shifting points within the areas. See Alton R. Co. v. United States, supra, 315 U.S. at 21, 62 S.Ct. at 436.

■ The Commission's order fails to contain findings which support its conclusions that the years 1955 and 1956 should not be considered. It is not clear whether the years 1959 and 1960 were arbitrarily excluded from consideration, but if they were because applicant failed to file exceptions from an overall acceptable Examiner's decision, refusal to consider such evidence upon the Commission's review of the Examiner's decision is error. Warren P. Kurtz "Grandfather" Application, MC–113533 (Sub. No. 15), June 29, 1961 (not printed in full); Alterman Transport Lines, Inc., Common Carrier "Grandfather" Application, MC–107107 (Sub. No. 111), March 29, 1961 (not printed in full). Whether the Commission has applied the proper standards in arriving at its conclusions and order

 

does not and cannot appear until the order reflects consideration of the applicable evidence.

This cause is remanded to the Commission for a rehearing in conformity with this opinion.