**W. W. HUGHES d/b/a Hughes Refrigerated Express**

**v.**

**UNITED STATES of America and Interstate Commerce Commission.**

**Civ. A. No. 41335.**

United States District Court E. D. Pennsylvania.

Nov. 28, 1967.

John F. Naulty, Philadelphia, Pa., for plaintiff.

Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., Nahum Litt, Washington, D. C., for defendant.

Before KALODNER, Circuit Judge, and CLARY and LORD, District Judges.

JOHN W. LORD, Jr., District Judge.

W. W. Hughes specializes in the transportation of perishable commodities. His major facility is located in Cornwells Heights, Pennsylvania. Hughes has brought this action [1] to set aside an order

---

1. Hughes has also requested that an injunction be entered against the Commission until the issues raised before this court in 1960 are disposed of. W. W. Hughes d/b/a W. W. Hughes Refrigerated Service v. United States, C.A. 28304. In the 1960 action Hughes requested this court to enjoin the Commission's cancellation of large portions of his tariff and schedule of rates. Plaintiff's position in the 1960 action is based upon the same construction of the "grandfather" provisions of the 1958 Transportation Act as are being advanced in this litigation. The matters of statutory construction resolved in this action will be dispositive of those raised in the 1960 litigation. An injunction had been entered in the 1960 action, holding that suit in abeyance until the Commission had determined Hughes' "grandfather" and certificate applications. The Commission has done so and the Commission's ruling on Hughes' applications is now under review in this present action.

of the Interstate Commerce Commission entered on January 17, 1966 relating to his application for (1) a "grandfather" rights authorization and (2) a common carrier certificate of public convenience and necessity for commodities not within the ambit of his "grandfather" request.

■ This court has jurisdiction pursuant to 49 U.S.C.A. § 17(9), 28 U.S.C.A. §§ 1336, 1398, and 2321–2325. A three-judge district court is required under 28 U.S.C.A. § 2284. See, Wright, FEDERAL COURTS § 103 (1963). The scope of review by this court is governed by the Administrative Procedure Act, 5 U.S.C.A. § 1009(e).[2] Cardinale Trucking Co. v. United States, 232 F.Supp. 339, 343 (D.N.J.1964). In addition, this court must be guided by the well established principles applicable to the review of an administrative agency order. An order of the Commission is presumed valid. The party attacking it has the burden of showing invalidity. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Baltimore & Ohio R. R. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209 (1936). If the Commission's order is supported by substantial evidence it may not be modified or set aside by this court if it is based upon adequate findings and is arrived at by proper application of the relevant legal standards. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942); Illinois Cent. R. R. v. Norfolk & W. R. R., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966). Where only a question of the weight of the evidence presented before the Commission is involved, this court may not

disturb the Commission's findings or conclusions. Ibid.

Most of the contentions presented to this court by Hughes involve the constitutionality and statutory construction of the Transportation Act of 1958. 49 U.S.C.A. § 303(b) (6); Public Law 85–625, 72 Stat. 573 (1958). Prior to consideration of the specific issues advanced by Hughes, a brief review of this legislation will be useful, if only to place Hughes' contentions into their proper perspective.

Part II of the Interstate Commerce Act, 49 U.S.C.A. §§ 301–327, provides for the regulation of motor carriers operating in interstate commerce. Sections 206 and 207 are the central provisions of the regulatory scheme. These sections prohibit motor carriers from operating in interstate commerce without holding a certificate of public convenience and necessity issued by the Commission. The certificate requirement is waived by the statute in the exemption situations outlined in section 203(b) of the Act. 49 U.S.C.A. § 303(b). A specific exemption is provided for motor vehicles engaged in the interstate transportation of " * * * property consisting of * * * agricultural (including horticultural) commodities (not including manufactured products thereof) * *." 49 U.S.C.A. § 303(b) (6).

■ Much litigation was produced, over the years, as to whether a product was within the section 203(b) (6) agricultural exemption or whether it was a "nonexempt" commodity subject to regulation.[3] The Transportation Act of 1958 was passed for a dual purpose: (1) to

---

2. The pertinent provisions of § 1009(e) are as follows:
 So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case * * *.

3. The series of cases overruling the Commission's determination that frozen agricultural commodities were "nonexempt" are representative of such litiga-

clarify and define what commodities are within the agricultural exemption, and (2) to halt the continued expansion of the agricultural commodities exemption, returning to regulation some eleven items specified in the amendment. Lester C. Newton Trucking Co. v. United States, 264 F.Supp. 869, 875 (D.Del.1967), aff'd *per curiam*, 389 U.S. 30, 88 S.Ct. 108, 19 L.Ed.2d 29 (1967).

Section 7(a) [4] of the 1958 Transportation Act, in amending section 203(b) (6), specifically provides the categorization of commodities as being "exempt" or "nonexempt". The Commission's "Commodity List" was incorporated into the statute. Specific items listed as "exempt" in the "Commodity List" were made "nonexempt" by the proviso. The amendment is not a startling piece of legislation. What Congress has done is to make the meaning of the agricultural exemption more clear, carefully delineating what items are within the exemption. Faced with the attempt to regulate the complex motor carrier industry, Congress originally passed legislation containing broad guidelines or standards as to the exemption. The Commission was charged with the responsibility of applying these standards to the myriad fact situations it reviewed. After the exemption standard had been construed by the Commission and the courts for a number of years, Congress was in a position, in 1958, to make the standard more explicit. Not only did this clarification of legislative intent aid the courts and the Commission, but the motor carriers themselves were in a position to readily know what commodities were within the ambit of the exemption. This hardening of the legislative standards is a highly commended course of legislative action. See, H. J. Friendly, "Federal Administrative Agencies: The Need For Better Definition of Standards," 75 Harv.L. Rev. 863, 1055, 1263 (1962).

Section 7(c) [5] of the Transportation Act of 1958 is referred to as the "grand-

tion. See, e. g., Frozen Food Express v. United States, 128 F.Supp. 374 (S.D. Tex.1955), rev'd in part 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730 (1956), aff'd in part sub nom. East Texas Motor Freight Lines, Inc. v. Frozen Food Express, 351 U.S. 49, 76 S.Ct. 574, 100 L. Ed. 917 (1956), further consideration 148 F.Supp. 399 (S.D.Tex.1956), aff'd per curiam 355 U.S. 6, 78 S.Ct. 38, 2 L.Ed.2d 22 (1957).

4. Section 7(a) provides as follows:
"Clause (6) of subsection (b) of section 203 of the Interstate Commerce Act, as amended, is amended by striking out the semicolon at the end thereof and inserting in lieu thereof a colon and the following: *'Provided,* That the words "property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)" as used herein shall include property shown as "Exempt" in the "Commodity List" incorporated in ruling numbered 107, March 19, 1958, Bureau of Motor Carriers, Interstate Commerce Commission, but shall not include property shown therein as "Not exempt": *Provided further, however,* That notwithstanding the preceding proviso the words "property consisting of ordinary livestock, fish (including shell

fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)" shall not be deemed to include frozen fruits, frozen berries, frozen vegetables, cocoa beans, coffee beans, tea, bananas, or hemp, and wool imported from any foreign country, wool tops and noils, or wool waste (carded, spun, woven, or knitted), and shall be deemed to include cooked or uncooked (including breaded) fish or shell fish when frozen or fresh (but not including fish and shell fish which have been treated for preserving, such as canned, smoked, pickled, spiced, corned or kippered products);'."

5. Section 7(c) provides as follows:
"Subject to the provisions of section 210 of the Interstate Commerce Act, if any person (or its predecessor in interest) was in bona fide operation on May 1, 1958, over any route or routes or within any territory, in the transportation of property for compensation by motor vehicle made subject to the provisions of part II of that Act by paragraph (a) of this section, in interstate or foreign commerce, and has so operated since that time (or if engaged in furnishing seasional service only, was in bona fide operation on May 1, 1958, during the season ordinarily covered by its operations and has so operated since that time),

father" provision. Section 7(c) provides that any person in bona fide operation in a territory on May 1, 1958 could apply for an authorization to continue the operation that the applicant had previously performed. However, one critical restriction was imposed—the "grandfather" privilege was limited to those commodities, such as frozen berries, frozen fruits and frozen vegetables, that had been exempt prior to 1958, but had come under regulation with the 1958 legislation. Willis Shaw Frozen Express, Inc. v. United States, 256 F.Supp. 257, 263 (W.D.Ark.1966); Hale Distributing Co. v. United States, 221 F. Supp. 266, 267–68 (S.D.Calif.1963); Milk Transport, Inc. v. Interstate Commerce Commission, 190 F.Supp. 350 (D. Minn.1960), aff'd *per curiam*, 368 U.S. 5, 82 S.Ct. 15, 7 L.Ed.2d 16 (1961).

The present litigation has a complex history. Hughes initially applied for a common carrier certificate on May 13, 1953. He sought an authorization for the transportation of (a) fresh, coldpacked, and frozen agricultural commodities, fish, seafood, and other foods (1) between points in New Jersey, New York, and Pennsylvania and twenty-three other designated states in the eastern United States, (2) from points in Michigan and designated points in Kentucky, Tennessee, Illinois, Ohio, Missouri and Virginia to points in six states and the District of Columbia, and (b) frozen fruits and prepared fresh fruits from three Kentucky counties to Nashville and Memphis,

Tennessee. This initial application was denied by the Commission. W. W. Hughes Extension—Frozen Foods [No. MC–105782 (Sub–No. 3)], 71 M.C.C. 457 (1957). Hughes filed his request for "grandfather" authorization under section 7(c) of the 1958 Transportation Act on December 8, 1958. W. W. Hughes "Grandfather" Application, No. MC–105782 (Sub–No. 4). He requested a "grandfather" authorization for (1) the transportation of the eleven commodities listed in the first proviso of section 7(a), (2) all those commodities listed in Administrative Rulings Nos. 107 and 110, whether exempt or nonexempt from economic regulation, and (3) any commodities not listed in these administrative rulings which may be included in the terms "property, * * * or agricultural (including horticultural) commodities * * *", between all points in the United States.

On May 24, 1962, the Commission entered its ruling on Hughes' "grandfather" application, together with its ruling on reconsideration of his original common carrier certificate application. 89 M.C.C. 471. Hughes was issued a "grandfather" permit. In addition, the Commission overturned its original denial of Hughes' common carrier certificate request and granted him the certificate for items not within the ambit of the "grandfather" statute. Hughes petitioned for reconsideration of both his 1962 authorizations and his petition was granted by the Commission. In January,

except in either instance as to interruptions of service over which such applicant or its predecessor in interest had no control, the Interstate Commerce Commission shall without further proceedings issue a certificate or permit, as the type of operation may warrant, authorizing such operations as a common or contract carrier by motor vehicle if application is made to the said Commission as provided in part II of the Interstate Commerce Act and within one hundred and twenty days after the date on which this section takes effect. Pending the determination of any such application, the continuance of such operation without a certificate or permit shall be lawful. Any carrier which on the date this section takes ef-

fect is engaged in an operation of the character specified in the foregoing provisions of this paragraph, but was not engaged in such operation on May 1, 1958, may under such regulations as the Interstate Commerce Commission shall prescribe, if application for a certificate or permit is made to the said Commission within one hundred and twenty days after the date on which this section takes effect, continue such operation without a certificate or permit pending the determination of such application in accordance with the provisions of part II of the Interstate Commerce Act." Section 7(c), Public Law 85–625, 72 Stat. 573 (1958).

1966, the Commission entered its order modifying the 1962 authorizations. In both his "grandfather" and common carrier certificate applications, Hughes had been granted broader rights than he had in the 1962 order. 100 M.C.C. 386 (1966). Hughes again petitioned for reconsideration. His request was denied on July 29, 1966, although the effective date of the January, 1966 order was stayed until October 14, 1966. The present suit was filed on October 12, 1966 and a temporary restraining order was entered pending disposition of this action.

Prior to considering Hughes' specific contentions, an outline of the Commission's January, 1966 "Report of Commission on Reconsideration" (100 M.C.C. 386 (1966)) will be extremely useful, since this report contains the Commission's findings and analysis of Hughes' applications. In the "grandfather" application, the Commission stated that " * * * it is apparent that a more liberal grant of 'grandfather' authority [for Hughes] * * * is justified in a number of respects * * *", especially in light of the guidelines mapped out by the Supreme Court in Willis Shaw Frozen Express, Inc. v. United States, 377 U.S. 159, 84 S.Ct. 1154, 12 L.Ed.2d 211 (1964).[6] Hughes had submitted documentary evidence of shipments transported as early as 1948 in support of his "grandfather" application. The Commission concluded that any evidence of shipments prior to 1954 would be too remote, stating:

* * * after careful analysis of all of the qualifying shipments listed in applicant's exhibit and all other materials related to this application, * * * consideration should be properly given to all traffic transported in and subsequent to 1954. This

period encompasses four growing seasons and is a reasonable period in which to determine the scope and continuity of applicant's operations on and since the critical date [May 1, 1958]. Traffic handled prior to that time is, in our opinion, too remote to warrant consideration here. (100 M.C.C. at 388–89).

Hughes has submitted to the Commission evidence of advertisements in trade publications, published prior to the enactment of the 1958 "grandfather" act, to indicate that he had been holding himself out to serve all points in the continental United States. The Commission applied the criteria relating to "holding out" as developed by the Supreme Court in the decision of United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942) and concluded:

* * * where applicant has provided some service in a particular territory, evidence of applicant's holding out to serve throughout the territory may support a broader grant of authority than might otherwise be justified. Where no operations are shown to have been conducted in a specific territory, mere holding out is an insufficient basis upon which to predicate a grant of authority. (100 M.C.C. at 389).

In addition, care was taken by the Commission, in light of the *Willis Shaw* decision, to determine whether Hughes had transported two or more commodities as a single class from any particular territory. 100 M.C.C. at 389.

Hughes had submitted various exhibits in support of his claims. Many of these exhibits were not considered by the Commission since they did not treat commodities entitled to "grandfather" protections under section 7(c) of the Transportation Act of 1958. The Commission also af-

---

**6.** The import of the Willis Shaw decision has been summarized as follows:
Finally, on May 4, 1964, the Supreme Court, in Willis Shaw * * * admonished the Commission to measure section 7(c) applications by the standards explicated in United States v. Carolina [Freight] Carriers Corp., 315

U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942), in construing the cognate provisions of section 206(a) of the Motor Carrier Act of 1935 (49 U.S.C.A. § 306).
Colonial Refrigerated Transportation, Inc. v. United States, 255 F.Supp. 999, 1002 (N.D.Ala.1966).

firmed the earlier ruling that evidence of shipments listed in an abstract accompanying the application would not be considered. The reason given by the Commission was that the abstracts were not referred to during the course of the hearing, although Hughes had ample opportunity to do so. Even so, the abstract was reviewed and considered to be duplicative of evidence already before the Commission. The Commission concluded that:

* * * an examination of the abstract indicates that its consideration would add little to the scope of our inquiry, inasmuch as the operations demonstrated thereby are substantially the same as those shown by exhibits introduced at the hearing. (Id. at 390).

The Commission, in considering Hughes' request to ship "exempt" commodities in mixed loads with "grandfather" commodities, concluded that the evidence he submitted warranted a finding of only one instance in which such transport was within the ambit of the statute. Finally, the Commission went into a state-by-state evaluation of all the evidence presented, and from this evidence entered its findings as to what specific "grandfather" rights Hughes was entitled to receive.

In the common carrier certificate phase of the proceedings (the so-called "Sub-No. 3" proceedings) the Commission reiterated its prior conclusion that Hughes had satisfactorily demonstrated that the public convenience and necessity would be served by granting his request for a certificate. In addition, the Commission modified the certificate and eliminated the restriction against tacking the specific authorization grants that had been imposed in 1962, concluding that the tacking restriction had been unjustified. Id. at 395.

The specific contentions [7] presented by Hughes to this court can be divided into three broad categories, as follows:

(1) *Constitutional considerations.* Plaintiff's principal constitutional contention appears to be that the denial of all the "grandfather" authorizations requested by him is tantamount to confiscation of his property without due process of law. The position is cast in varying forms. Hughes argues that the agricultural exemption gave him a "franchise" and that Congress and the Commission can not deprive him of this franchise without compensation. He further argues that Congress cannot overturn earlier court opinions as to whether a particular commodity was within the original broad standard of exemptions, i. e., whether it was an "agricultural" commodity exempt under the Act prior to the amendment in 1958. Hughes also contends that by incorporating the "Commodity List" into the 1958 statute, Congress is passing a retroactive law depriving him of his property or at least, giving the "Commodity List" the force of law, prior to 1958.

(2) *Statutory interpretation issues.* Here, Hughes' primary contention is that the limitation of Section 7(c) "grandfather" rights to the eleven commodities listed in the first proviso of the 1958 Amendments to Section 203(b) (6), both by the Commission and the courts [8] is contrary

---

7. Any attempt to separately list and discuss each specific contention raised by plaintiff would prove virtually impossible. Plaintiff, after the untimely death of his attorney who had represented him during the early stages of the agency proceedings, was the only person familiar with the numerous and complex facets of his case. He has filed an 18 page complaint in this suit, and has expanded the points outlined in the complaint in his opening brief and in his reply brief.

The opening brief is in excess of 2000 pages, while the reply brief contains more than 100 pages. However, the general categorization does synopsize the salient points raised by plaintiff for review by this court.

8. E. g., Milk Transport, Inc. v. Interstate Commerce Commission, 190 F. Supp. 350 (D.Minn.1960), aff'd per curiam, 368 U.S. 5, 82 S.Ct. 15, 7 L.Ed. 2d 16 (1961).

to the plain meaning of the statute. He further contends that there is no statutory authorization for the Commission to hold any proceedings to determine whether a party is entitled to "grandfather" rights.

(3) *Errors by Commission in determining plaintiff's certificate rights.* Here plaintiff's position is fragmented. He contends that the injunction entered by this court in 1960 is still in force and renders any agency determination null and void. In the "grandfather" proceeding, Hughes maintains that the burden of proof was erroneously placed upon him, the applicant. He further urges that the 1954 cut-off date was arbitrary and that the Commission atomized his prior service. In addition, Hughes contends that in determining his "holding out" status the Commission applied an erroneous "actual operation" criteria. Hughes argues that the Commission erred in not granting him between points rights. Finally, Hughes contends that the arbitrary refusal by the Commission to consider relevant items of evidence requires that the January, 1966 order be set aside.

## DISCUSSION

 Hughes' major contention advanced in seeking to have this court set aside the January, 1966 Commission ruling is that the Interstate Commerce Commission, in applying the Transportation Act of 1958 to his applications, has deprived him of property without due process of law. Hughes' argument suffers from one significant flaw. In order to demonstrate that the Commission has deprived him of his property without due process of law, Hughes must first establish, as a prerequisite to relief, that he " * * * was possessed of property in the constitutional sense and had been deprived of it by an order of the administrative agency without fair opportunity to be heard." Cardinale Trucking Co. v. United States, 232 F.Supp. 339, 343 (D.N.J.1964), citing Atchison, Topeka &

Santa Fe R. R. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932). In the *Cardinale* case, the plaintiff claimed that the Interstate Commerce Commission's order denying him leave to reopen the "grandfather" proceedings, which he had instituted under the 1935 Motor Carriers Act, amounted to an unconstitutional confiscation of his property. This claim of unconstitutionality was dismissed in the following terms by the *Cardinale* court:

An interstate carrier has no absolute vested right to use the public highways for gain. If accorded the privilege to operate as a carrier by license or franchise issued pursuant to legislative enactment, the carrier does have a right to reasonable compensation for the services it is required to render. Unreasonable denial of that right by arbitrary action of an administrative agency does raise the constitutional question of deprivation of property without due process of law. See Atchison, Topeka & Santa Fe Ry. Co. v. United States, supra. But reasonable control of the extent and nature of the operations of a carrier, exercised by the Commission pursuant to legislative enactment in furtherance of the paramount public interest, does not constitute an unlawful invasion of any constitutional right. (232 F.Supp. at 343–344).

Although the constitutional issues discussed in *Cardinale* were not expressly mentioned in the *Milk Transport* decision, supra, it is clear from the language employed in the *Milk Transport* case that no unconstitutional deprivation of property occurred with the passage of the 1958 Motor Transport Act. The matter is presented in the *Milk Transport* decision in the following terms:

It is axiomatic that Congress could include or exclude any commodities from the benefit of the "grandfather" clause. Congress could have refused to include any "grandfather" benefits in the 1958 Act. (190 F.Supp. at 352–353).

As the plaintiff attempted in *Cardinale,* Hughes is adopting the position that the Congressional regulatory scheme constitutes an unconstitutional deprivation of property. His position is untenable, for the Commission is merely exercising "reasonable control" over his operations, of a type and character sanctioned by the Supreme Court in the *Atchison* decision, supra.

Hughes has called this court's attention to the Supreme Court decisions in Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893); United States v. Ferreira, 55 U.S. 40 (1852); and Hayburn's Case, 2 Dall. 409 (1792). These decisions are neither applicable nor instructive. In the *Monongahela* case the Supreme Court held that when Congress exercises its power of condemnation, it must compensate a dam owner for the value of a state franchise awarded him by the Commonwealth of Pennsylvania which had enabled him to collect tolls. Not only has Hughes misconceived the agricultural exemption afforded him to be a "franchise", but he has misconstrued regulation for condemnation. The reliance on the *Ferreira* and *Hayburn's Case* by Hughes is unclear. He has attempted to argue that Congress, in passing the 1958 amendments, is exercising the prerogative of a court in construing legislative intent, in violation of the constitutional theory of separation of powers. The argument is garbled. Congress passed the original statute exempting "agricultural" commodities. Over the course of years, courts have given their opinion as to whether a specific commodity was within this Congressional exemption, always attempting to give effect to the Congressional intent. In 1958, with the passage of the Transportation Act, Congress clarified and defined the scope of the agricultural exemption, as was its prerogative. The courts have never attempted to go beyond what they thought was the Congressional mandate behind the agricultural exemption. There is no usurpation of the judicial prerogatives when Congress clarifies that mandate.

Hughes' final constitutional argument is equally unclear. He urges that since the "Commodity List" incorporated into section 7(a) existed prior to the date 7(a) was enacted, Congress has given this commodity list the force of law before the law was passed. This is absurd. The commodity list, incorporated by reference into section 7(a), had the force of law when section 7(a) was enacted on August 12, 1958.

Hughes has raised two distinct points involving statutory construction: (1) that section 7(a) of the Transportation Act of 1958 intended to make all commodities therein listed, whether exempt or nonexempt, eligible for "grandfather" rights, and (2) that "[n]o proceedings were contemplated or sanctioned by the 1958 Amendment to the Motor Carrier Act of 1935." (Plaintiff's Opening Brief at 6007). The Commission has taken the position that section 7(a) brought only 11 commodities under regulation and this position was sustained in the *Milk Transport* decision, supra, which was affirmed per curiam by the United States Supreme Court in 1961. In light of this precedent, this court will accept the Commission's construction as proper. As to the second point, a brief glance at the "grandfather" statute indicates that the Commission has Congressional authorization to grant "grandfather" rights only upon determining that the applicant was " * * in bona fide operation on May 1, 1958 * * *." Clearly, the proper method for reaching such a determination is by the established agency practice of holding hearings. During such proceedings it is equally clear that the burden of proof is on the applicant, who must support his claim for "grandfather" rights by evidence that is " * * * substantial, as distinguished from incidental, sporadic, or infrequent." United States v. Carolina Carriers Corp., supra, 315 U.S. at 480–481, 62 S.Ct. at 726.

Aside from his constitutional and statutory arguments, Hughes has

cited numerous examples of what he considers to be errors on the part of the Commission. He requests this court to correct these errors and remand the matter back to the Commission by enjoining the January, 1966 ruling which the Commission entered on his "grandfather" and common carrier certificate applications. As stated earlier, this court will not disturb matters of factual judgment which are entrusted to the Commission's sound discretion. United States v. Carolina Freight Carriers Corp., supra. The primary concern of this court will involve the determination of whether the statutory standards have been properly applied by the Commission.

 Hughes has contended that in applying a 1954 cut-off date in his "grandfather" application proceeding, the Commission has imposed an arbitrary restriction on his evidence demonstrating operations prior to May 1, 1958. Plaintiff relies on such decisions as Winter Garden Co. v. United States, 211 F. Supp. 280, 287–288 (E.D.Tenn.1962); Frozen Food Express v. United States, supra, 219 F.Supp. at 137; and Hale Distributing Co. v. United States, supra, 221 F.Supp. at 269–270. In these decisions the Commission's practice of using a January 1, 1957 cut-off date was criticized, primarily on the basis that the Commission could not formulate a fair picture of an agricultural carrier's prior operations when the evidence was limited to one growing season. The Commission, in considering Hughes' application, adopted a four growing season cut-off, in order to remedy the defect criticized by the courts. It is the opinion of this court that the use of a four season cut-off is not arbitrary nor an abuse of agency discretion. One of the areas of the Commission's expertise is to formulate relevant guidelines for evaluating evidence of transportation trends. While the one growing season limitation is unduly harsh, especially in light of the variable production levels of agricultural commodities from year to year, a four year growing season remedies this unduly narrow test. By affording an agri-

cultural carrier a four season cut-off, the Commission assures him that he will not be penalized for a bad crop year, while also maintaining the public interest in regulating all transportation that does not meet the "bona fide operation" criteria outlined in the "grandfather" statute.

 Hughes has argued that the Commission had applied an "actual operation" test in determining whether he had been properly "holding out" his services in the entire continental United States. Plaintiff has misstated the Commission's ruling. The Commission took pains to follow the guidelines of the United States v. Carolina Freight Carriers Corp., supra, case and evaluated Hughes' holding out and solicitation *in connection with actual service* during the "grandfather" period. This is the correct test. Frozen Food Express v. United States, supra, 219 F.Supp. at 139. Accord, Colonial Refrigerated Transport, Inc. v. United States, 255 F.Supp. 999, 1003 (N.D.Ala.1966). Nor do the geographical restrictions and territory delineations imposed by the Commission constitute an abuse of discretion. See, Lester C. Newton Trucking Co. v. United States, 264 F.Supp. 869, 884 (D.Del. 1967, aff'd *per curiam*, 389 U.S. 30, 88 S.Ct. 108, 19 L.Ed.2d 29 (1967).

 On September 15, 1960, in the W. W. Hughes d/b/a W. W. Hughes Refrigerated Service v. United States, suit (C.A. 28304), this court entered an injunction holding that action in abeyance until the Commission would have an opportunity to make final rulings on Hughes' "grandfather" and common carrier applications. The Commission made its final rulings in the January 17, 1966 "Report of the Commission on Reconsideration" now under review. 100 M.C.C. 386. Hughes has argued that this injunction, entered in his 1960 suit to enjoin the Commission's rulings on his tariffs and rate schedules, renders the 1966 Commission rulings on his "grandfather" and common carrier applications null and void. This argument is untenable, for not only is the 1960 injunction,

by its express terms, limited to the matters raised in the 1960 suit, the injunction was entered for the purpose of allowing the Commission an opportunity to pass on Hughes' "grandfather" and common carrier applications. The injunction entered in the 1960 suit, therefore, is of no effect in relation to the validity of the January 1966 Commission rulings.

■ Plaintiff has complained that the Commission erred in excluding specific items of evidence. Plaintiff conceded to the Commission that one of these excluded items, "Exhibit B" was included in his abstract attached to his brief submitted to the hearing examiner. The hearing examiner refused to consider the abstract itself and was upheld by the Commission. Plaintiff had ample opportunity to present these materials during the course of the hearing, but did not do so. Under such circumstances, the refusal is not an abuse of discretion. Furthermore, the Commission, at 100 M.C.C. 390, did indicate that "[a]n examination" of the abstract showed that it contained cumulative evidence, " * * * inasmuch as the operations demonstrated thereby are substantially the same as those shown by exhibits introduced at the hearing." The net effect is that the Commission, although properly excluding these materials, did review them and concluded that the abstract did not warrant any broader grant of authority.

■ Hughes' final contention is that the Commission erred in evaluating the evidence presented in support of his common carrier application, especially since he has not been afforded return rights. Even though, in most instances, plaintiff is entitled to handle rejected and most return shipments without specific authority from the Commission (Western Auto Transports, Inc. Exten., —Hydraulic Hammers, 72 M.C.C. 249, 252), this court, upon review of the record, concludes that the Commission carefully evaluated the evidence presented and reached its conclusions based upon substantial evidence. Absent an abuse of discretion or a prejudicial departure from the requirements of the law, this court is without authority to substitute its own judgment for that of the Commission. Considerations of the weight of the evidence and the inferences to be drawn therefrom are the prerogative of the Commission. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946).

Upon review of the contentions advanced by plaintiff, all of which have been considered during review of his briefs and during oral argument, and most of which have been synopsized and discussed herein, this court concludes that plaintiff's complaint must be dismissed.